### McLEAN TRUCKING COMPANY, Petitioner,

#### v.

### OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Secretary of Labor, Respondents.

#### No. 73–2392.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1974.

Decided Sept. 4, 1974.

---

3. People v. Lucas, 28 N.Y.2d 761, 321 N.Y.S.2d 914, 269 N.E.2d 914, cert. denied, 404 U.S. 994, 92 S.Ct. 542, 30 L.Ed.2d 547 (1971).

Wayne H. Foushee, for petitioner.

Karen K. Siegel, Atty., U. S. Dept. of Justice (William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol., for Occupational Safety and Health, Michael H. Levin, Washington, D. C., for Appellate Litigation, Helen Schuitmaker, Atty., U. S. Dept. of Labor, Carla A. Hills, Asst. Atty. Gen., and Stephen F. Eilperin, Atty., U. S. Dept. of Justice, on brief, for respondents.

Before CRAVEN, RUSSELL and FIELD, Circuit Judges.

FIELD, Circuit Judge:

McLean Trucking Company (McLean) has petitioned pursuant to Section 11(a) of the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. § 651 et seq., for review of a final order of the Occupational Safety and Health Review Commission (Commission) which became final on October 31, 1973. This court has jurisdiction under 29 U.S.C. § 660(a).

The order determined that McLean had violated Section 5(a)(2) of the Act by its non-compliance with 29 C.F.R. 1910.132(a) [1] in failing to furnish protective foot equipment to its dock employees and require them to wear the same while working. The order held that a penalty was inappropriate under the circumstances of the case and enlarged the period of abatement to include ninety days from the date of the final order of the Commission. McLean is a motor vehicle common carrier which operates over one hundred terminals throughout the United States, one of which is located in Richmond, Virginia. At the Richmond terminal the dock workers transfer freight between waiting trucks or between designated dock areas and trucks. The freight handled on the dock is a mélange of sizes and shapes and the weight of the items varies from ten pounds to fifteen hundred pounds. Approximately seventy per cent of the containers are moved by hand or dollies and the remaining thirty per cent of the freight is moved by forklift trucks.

On April 6, 1973, a compliance officer of the Department of Labor conducted an inspection of the Richmond terminal, during the course of which he observed the loading dock operations and learned that McLean did not require its dock employees to wear safety shoes or other means of foot protection. The dockmen wore all types of footwear from tennis shoes and sandals to substantial work shoes. The officer noted that the freight being carried by the employees or placed on the dollies or forklifts could drop or fall on an employee's foot and learned that, in fact, ten foot injuries had been reported in the three years

---

1. 29 C.F.R. 1910.132 appears as the first section of a subpart entitled "Personal Protective Equipment" and provides:

(a) *Application.* Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.

(b) *Employee-owned equipment.* Where employees provide their own protective equipment, the employer shall be responsible to assure its adequacy, including proper maintenance, and sanitation of such equipment.

(c) *Design.* All personal protective equipment shall be of safe design and construction for the work to be performed.

prior to his inspection. The compliance officer concluded that the dock operation was conducive to foot injuries and that protective foot equipment should be worn and, accordingly, on April 19, 1973, the Secretary cited McLean for a non-serious violation of Section 5(a)(2). McLean timely contested the citation pursuant to 29 U.S.C. § 659(c), whereupon the Secretary filed a formal complaint before the Commission. Upon McLean's answer the case was heard by an administrative law judge of the Commission, and upon the evidence adduced the judge determined that McLean had violated the Act. This decision of the administrative law judge became the final order of the Commission pursuant to 29 U.S.C. § 661(i) and McLean's petition for review of this order followed.[2]

■ Primarily, McLean challenges the Commission's order on the ground that the standard of conduct of 29 C.F.R. 1910.132(a) is so vague that men of common intelligence must necessarily guess at its meaning and, accordingly, it is constitutionally impermissible. In rejecting McLean's contention on this point the administrative law judge relied upon the Commission's decision in Ryder Truck Lines v. Brennan, 1 OSHC 1290, OSHRC No. 391 (1973). In that case Ryder was cited for non-compliance with the subject regulation by its failure to require foot protection for its employees on its loading dock, and like McLean in the present case, challenged the validity of the regulatory standard. The Commission (Moran, Chairman, dissenting) rejected Ryder's contention. Subsequent to the oral argument in the present case the Fifth Circuit affirmed the action of the Commission and denied Ryder's petition for review. Ryder Truck Lines, Inc. v. Brennan, 497 F.2d 230 (5 Cir., 1974). In rejecting Ryder's

claim of vagueness that Court noted that the regulation implements remedial civil legislation in contradistinction to criminal legislation, and since the rights guaranteed by the First Amendment are not even remotely involved, the regulation should be considered in the light of its application rather than on its face, citing United States v. National Dairy Corp., 372 U.S. 29, 36, 83 S.Ct. 594, 9 L. Ed.2d 561 (1963).

In addition to the foregoing "two critical factors," we agree with the observation in Ryder that "[t]he regulation appears to have been drafted with as much exactitude as possible in light of the myriad conceivable situations which could arise and which would be capable of causing injury," and that inherent in the regulatory standard "is an external and objective test, namely, whether or not a reasonable person would recognize a hazard of foot injuries to dockmen, * * *." This appraisal of the subject regulation accords with the Congressional purpose as reflected in the general duty statute that an employer must

"furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. § 654(a)(1).

The language employed in the foregoing statute is certainly no more definitive than that of the subject regulation,[2a] and we note that in its consideration of this legislation the Senate committee recognized "that precise standards to cover every conceivable situation will not always exist"[3] and with respect to the general duty standard stated:

"The committee has concluded that such a provision is based on sound

2. On November 12, 1973, McLean moved the Commission for a stay of its order *pendente lite* which stay granted.

2a. The standard of the general duty statute was upheld in National Rlty. & C. Co., Inc.

v. Occupational S. & H. R. Com'n, 489 F.2d 1257 (D.C.Cir.1973).

3. S.Rep.No.91–1282, Oct. 6, 1970, U.S.Code Cong. & Admin.News, 91st Cong.2d Sess., p. 5185.

and reasonable policy. Under principles of common law, individuals are obliged to refrain from actions which cause harm to others. Courts often refer to this as a general duty to others. Statutes usually increase but sometimes modify this duty. The committee believes that employers are equally bound by this general and common duty to bring no adverse effects to the life and health of their employees throughout the course of their employment." [4]

In effect the legislative and regulatory standards call for the "reasonable man" test and the application of this classic criterion eliminates to a large degree the alleged facial vagueness.[5] McLean's argument that it was unable to ascertain what was required of it under the Act and Regulations is further blunted by the fact that 29 C.F.R. 1910.136 specifies that safety-toe foot-wear "shall meet the requirements and specifications in American National Standard for Men's Safety-Toe Footwear, Z41.1–1967."

In our opinion the totality of the foregoing elements was sufficient to convey to McLean a reasonable understanding of the conduct required of it by 29 C.F. R. 1910.132. *See* United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947).

■ McLean also contends that the Act denies it procedural due process by permitting the Secretary to issue citations with proposed penalties without giving employers an opportunity to be heard. It should be noted, however, that it is only where the employer fails to contest the citation that it becomes final and unreviewable. 29 U.S.C. § 659(a). If the employer contests the citation, the Commission is required to conduct a hearing and thereafter "issue an order, based on findings of fact, affirming, modifying, or vacating the Secretary's citation or proposed penalty . * * *." 29 U.S.C. § 659(c). "Such a procedure, so long as it affords to those affected a reasonable opportunity to be heard and present evidence, does not offend against due process." Yakus v. United States, 321 U.S. 414, 433, 64 S.Ct. 660, 671, 88 L.Ed. 834 (1944).

■ McLean's final contention that the Act unconstitutionally delegates judicial power to the Secretary of Labor is without merit. The Congress gave careful consideration to this question and while the Secretary is authorized to set mandatory standards and issue citations, the Act vests the adjudicatory function in the Commission as an independent governmental agency.[6] With the right of administrative and judicial review carefully preserved, the mere fact that the initial adjudicative function has been conferred upon the Commission does not bring this legislation into conflict with the principle of the separation of powers. *See* Yakus v. United States, *supra;* Davis, Administrative Law Treatise, Vol. 1, § 2.12.

The petition is denied.

---

4. *Id.*, p. 5186.

5. In a floor speech Representative Daniels, in discussing the general duty clause stated:
A recognized hazard is a condition that is known to be hazardous, and is known not necessarily by each and every individual employer but is known taking into account the standard of knowledge in the industry. In other words, whether or not a hazard is "recognized" is a matter for objective determination; it does not depend on whether the particular employer is aware of it. 116 Cong. Rec. (Part 28) 38377 (1970).

6. 29 U.S.C. §§ 651(b)(3) and 661.