**BRISTOL STEEL & IRON WORKS, INC., Petitioner,**

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, and Ray Marshall, Secretary of Labor, Respondents.**

No. 77-2485.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1979.

Decided June 25, 1979.

---

James P. Jones, Abingdon, Va. (Penn, Stuart, Eskridge & Jones, Abingdon, Va., on brief), for petitioner.

Charles I. Hadden, U. S. Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., for Occupational Safety and Health; Allen H. Feldman, Acting Counsel for Appellate Litigation, Dennis K. Kade, Asst. Counsel for Appellate Litigation, Washington, D. C., Marshall H. Harris, Regional Sol., Philadelphia, Pa., on brief), for respondents.

Before WINTER and WIDENER, Circuit Judges and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

Bristol Steel & Iron Works, Inc. (Bristol) appeals from an order of the Occupational Safety and Health Review Commission (Commission) holding that Bristol had violated § 5(a)(2) of the Occupational Safety and Health Act (Act), 29 U.S.C. § 651, *et seq.*[1] Judicial review of the Commission's order is provided by § 11(a) of the Act, 29 U.S.C. § 660(a).

The parties stipulated to the underlying facts of the case. During an inspection by an Occupational Safety and Health Administration (OSHA) officer[2] of a work site where Bristol was engaged in skeleton steel erection, two of Bristol's employees, while rigging up a float scaffold which was to be used in skeleton steel erection, were observed on a wall, 12 to 18 inches wide, which was located on the second floor of a building and which was approximately 16 feet in height above concrete stairs. Both employees were wearing but not using safety belts, nor were they using lanyards or any other personal, protective, fall equipment. Bristol stipulated that the two employees were exposed to the hazard of falling and that if such a fall had occurred, there existed a substantial probability of serious injury or death.

Bristol was cited by the OSHA inspector[3] for violation of the general construction safety standard set forth at 29 C.F.R.

---

1. Section 5(a)(2) of the Act provides:
   (a) Each employer—
   (2) shall comply with occupational safety and health standards promulgated under this chapter.
   29 U.S.C. § 654(a)(2). The standard which Bristol allegedly violated was a general safety standard under the Safety and Health Regula-

tions For Construction, and is found at 29 C.F.R. § 1926.28(a). *See* note 4 *infra.*

2. Inspection is authorized by § 8(a) of the Act, 29 U.S.C. § 657(a).

3. Issuance of a citation is authorized by § 9(a) of the Act, 29 U.S.C.A. § 658(a).

§ 1926.28(a)[4] as well as four other standards. Bristol contested the § 1926.28(a) violation[5] but did not contest the remaining four violations. Reasoning that no specific safety standard was directly applicable to the facts presented which would preempt the general construction safety standard found in § 1926.28(a), the administrative law judge (ALJ) affirmed the citation for violation of § 1926.28(a) and assessed a $600 penalty.[6] On review the Commission affirmed the decision of the ALJ by a one-one vote.[7] Voting for affirmance, Commissioner Cleary felt that absent an applicable specific safety standard, the general construction safety standard of § 1926.28(a) was applicable and that avoidance of a duty to use safety belts under that section was an affirmative defense which had not been proven. Voting for reversal, Commissioner

Barnako took the position that specific safety standards applicable to steel erection applied to the nature of the work performed by the two employees, and that these specific standards precluded the application of the § 1926.28(a) general construction safety standard; and that even if § 1926.28(a) applied, the Secretary had the burden of proving the feasibility and utility of the specific measures necessary to abate the hazard and had failed to carry that burden.

I

Not unexpectedly, Bristol adopts the position of Commissioner Barnako that the action of the Secretary in promulgating the specific safety standards applicable to steel erection in Subpart R of Section 1926[8] pre-

4.	(a) The employer is responsible for requiring the wearing of appropriate personal protective equipment in all operations where there is an exposure to hazardous conditions or where this part indicates the need for using such equipment to reduce the hazards to the employees.
29 C.F.R. § 1926.28(a).
Although Bristol did not require the two employees to wear safety belts, they were wearing but not using the belts. Bristol was cited for not requiring "the wearing of appropriate personal protective equipment (safety belts and lanyards)." (App. at 2). Since Bristol has not raised the issue of whether there exists any distinction between "wearing" and "using" personal protective equipment, we do not address that issue here.

5.	An employer is authorized under § 10(a) of the Act, 29 U.S.C. § 659(a), to contest a citation.

6.	The parties stipulated that "if it is ultimately determined that respondent is in violation of 29 C.F.R. § 1926.28(a), then the proposed penalty is reasonable and in accordance with the Act * * *." (App. at 11).

7.	*Bristol Steel & Iron Works, Inc.,* OSHRC Docket No. 14537, 1977–1978 OSHD (CCH) ¶ 22,240. The Secretary has raised the issue of whether this court has jurisdiction to review the decision of an equally divided Commission. While the Act provides for three Commissioners, 29 U.S.C. § 661(a), there have been times when the Commission has been comprised of only two members. Although the Fifth and Ninth Circuits have held that § 12(f) of the Act, 29 U.S.C. § 661(e), requires the affirmative vote of at least two members of the Commission in order to constitute reviewable "official action"

by the Commission, *see Cox Bros., Inc. v. Secretary of Labor,* 574 F.2d 465, 467 (9 Cir. 1978); *Shaw Construction, Inc. v. OSHRC,* 534 F.2d 1183, 1185–86 (5 Cir. 1976), this court in *George Hyman Construction Co. v. OSHRC,* 582 F.2d 834, 836–37 (4 Cir. 1978), expressed "doubt that Congress intended the quorum requirement of § 12(f) to serve as a bar to judicial review," and upheld judicial review in the absence of two affirmative votes by members of the Commission.
In *Bristol Steel* the Commission explained that a split one-one vote by the Commission constitutes an affirmance of the decision of the ALJ although the decision of the Commission in such case is not entitled to any precedential value.

8.	29 C.F.R. § 1926.750(b)(1)(ii):
On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet. The nets shall be hung with sufficient clearance to prevent contacts with the surface of structures below.
29 C.F.R. § 1926.750(b)(2)(i):
Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed, except when gathering and stacking temporary floor planks on a lower floor, in preparation for transferring such planks for use on an upper floor. Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.
29 C.F.R. § 1926.750(b)(2)(iii):

cludes a citation under the general construction standards set forth in 1926.28(a). Bristol argues that the Secretary considered the entire subject of fall protection for steel erectors in Subpart R and, accordingly, the specific standards are exclusive in this area. In our opinion, however, this argument runs counter to the legislative pattern and objectives.

■ The declared purpose of the Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources * * *." 29 U.S.C. § 651(b). Being remedial and preventative in nature,[9] the Act must "be construed liberally in favor of the workers whom it was designed to protect * * *." *Southern Railway Co. v. OSHRC,* 539 F.2d 335, 338 (4 Cir. 1976), *cert. den.,* 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609 (1976) (quoting *Wirtz v. Ti Ti Peat Humus Co.,* 373 F.2d 209, 212 (4 Cir. 1967)). While the Act substantially contemplates specific safety standards promulgated by the Secretary, *see American Smelting & Refining Co. v.*

OSHRC, 501 F.2d 504, 512 (8 Cir. 1974); *Brennan v. OSHRC (Gerosa, Inc.),* 491 F.2d 1340, 1343 (2 Cir. 1974), its purposes are also effectuated by the general safety standards and the general duty clause [10] which are designed to fill those interstices necessarily remaining after the promulgation of specific safety standards.[11]

■ The specific standards relied upon by Bristol, while providing safety protection to employees engaged in steel erection, cannot achieve the goal of adequately protecting those employees in every conceivable situation. Infinite hypotheticals can be envisioned in which employees engaged in steel erection would be exposed to an unnecessary hazard not covered by a Subpart R specific safety standard. The general safety standard dealing with personal protective equipment found in 29 C.F.R. § 1926.28(a) complements the Subpart R specific standards dealing with steel erection by requiring "the wearing of appropriate personal protective equipment [where there is a need] for using such equipment to reduce the hazards to the employees."

> When gathering and stacking temporary floor planks from the last panel, the employees assigned to such work shall be protected by safety belts with safety lines attached to a catenary line or other substantial anchorage. 29 C.F.R. § 1926.752(k):
>
> Employees shall be provided with safety belts in accordance with § 1926.104 when they are working on float scaffolds.
>
> In addition Bristol cites 29 C.F.R. 1926.105(a) which provides:
>
> Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

9. *See B. & B. Insulation, Inc. v. OSHRC,* 583 F.2d 1364, 1371 (5 Cir. 1978); *Marshall v. Cities Service Oil Co.,* 577 F.2d 126, 130 (10 Cir. 1978); *REA Express, Inc. v. Brennan,* 495 F.2d 822, 825 (2 Cir. 1974).

10. The general duty clause provides:
    (a) Each employer—
    (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees * * *.

29 U.S.C. § 654(a)(1).

11. It would be utterly unreasonable to expect the Secretary to promulgate specific safety standards which would protect employees from every conceivable hazardous condition. Enforcement of general safety standards in situations not covered by specific standards does not render the specific standards meaningless or unnecessary. Specific safety standards insure a minimum level of protection to employees under common conditions widely recognized as potentially hazardous as well as provide employers with a base upon which to establish an adequate safety program. While general safety standards may quite likely cover most conditions addressed by the specific standards, fairness to the employer would require the promulgation of specific safety standards where feasible. *See* Senate Rep.No. 91–1282, 91st Cong., 2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad.News 5177, 5184; *Arkansas-Best Freight Systems, Inc. v. OSHRC,* 529 F.2d 649, 656 (8 Cir. 1976). Lacking the omniscience to perceive the myriad conditions to which specific standards might be addressed, however, the Secretary, in an effort to insure the safety of employees as required by the Act, must at times necessarily resort to the general safety standards. *See* Senate Rep.No. 91–1282, 91st Cong.2d Sess., *reprinted in* [1970] U.S. Code Cong. & Ad.News 5177, 5185–86.

Bristol suggests that its position is supported by 29 C.F.R. § 1910.5(c)(1) [12] which provides that a specific standard applicable to a condition shall prevail over any different general standard which might otherwise be applicable thereto. This argument, however, elides the language of § 1910.5(c)(2) that any standard shall apply according to its terms, even though particular standards are also prescribed for an industry, to the extent that none of such particular standards apply. Were § 1910.5(c) read in the manner Bristol suggests, the Secretary would be prevented from coping with the variety of hazards not covered by the specific standards, and we decline to read it in such a limited fashion.

## II

While § 1926.28(a) is not preempted by the Subpart R specific safety standards, it cannot be so broadly construed and applied as to deny Bristol reasonable notice of what safety precautions are required.[13] To satisfy due process requirements the courts have applied some form of the reasonable man test to the general duty clause and the various general safety standards found in the regulations.[14] In *McLean Trucking Co. v. OSHRC*, 503 F.2d 8 (4 Cir. 1974), we rejected a vagueness challenge to 29 C.F.R. § 1910.132(a), a general personal protective equipment safety standard, by adopting "an external and objective test, namely, whether or not a reasonable person would recognize a hazard of foot injuries to dockmen * * *." 503 F.2d at 10 (quoting *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5 Cir. 1974)). The Fifth Circuit, from which the above test was quoted, continued: "So long as the mandate affords a reasonable warning of the proscribed conduct in light of common understanding and practices, it will pass constitutional muster." 497 F.2d at 233.

This reasonable man test has recently been more fully considered by the Fifth Circuit in *B. & B. Insulation, Inc. v. OSHRC*, 583 F.2d 1364 (5 Cir. 1978). Like the present case, the company in *B. & B.* was cited for a violation of 29 C.F.R. § 1926.28(a). Rejecting the argument that § 1926.28(a) was unenforceably vague, the court read the standard

> to require only those protective measures which the knowledge and experience of the employer's industry, which the employer is presumed to share, would clearly deem appropriate under the circumstances.
>
> *      *      *      *
>
> * * * [T]he employer whose activity is not yet addressed by a specific regulation and whose conduct conforms to the

**12.** 29 C.F.R. § 1910.5(c) reads in pertinent part as follows:

> (1) If a particular standard is specifically applicable to a condition, practice, means, method, operation, or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation, or process. For example, § 1501.-23(c)(3) of this title prescribes personal protective equipment for certain ship repairmen working in specified areas. Such a standard shall apply, and shall not be deemed modified nor superseded by any different general standard whose provisions might otherwise be applicable, to the ship repairmen working in the areas specified in § 1915.23(c)(3).
>
> (2) On the other hand, any standard shall apply according to its terms to any employment and place of employment in any industry, even though particular standards are also prescribed for the industry, as in Subpart B or Subpart R of this part, to the extent that none of such particular standards applies.

> To illustrate, the general standard regarding noise exposure in § 1910.95 applies to employments and places of employment in pulp, paper, and paperboard mills covered by § 1910.261.

**13.** See *B. & B. Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1367 (5 Cir. 1978); *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5 Cir. 1974); *McLean Trucking Co. v. OSHRC*, 503 F.2d 8, 10–11 (4 Cir. 1974).

**14.** See *B. & B. Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1369 (5 Cir. 1978); *American Airlines, Inc. v. Secretary of Labor*, 578 F.2d 38, 41 (2 Cir. 1978); *Brennan v. Smoke-Craft, Inc.*, 530 F.2d 843, 845 (9 Cir. 1976); *Arkansas-Best Freight Systems, Inc. v. OSHRC*, 529 F.2d 649, 655 (8 Cir. 1976); *Cape & Vineyard Div. v. OSHRC*, 512 F.2d 1148, 1152 (1 Cir. 1975); *McLean Trucking Co. v. OSHRC*, 503 F.2d 8, 10 (4 Cir. 1974); *Ryder Truck Lines, Inc. v. Brennan*, 497 F.2d 230, 233 (5 Cir. 1974).

common practice of those similarly situated in his industry should generally not bear an extra burden.

Where the Government seeks to encourage a higher standard of safety performance from the industry than customary industry practices exhibit, the proper recourse is to the standard-making machinery provided in the Act, selective enforcement of general standards being inappropriate to achieve such a purpose.

583 F.2d at 1367, 1371 (footnotes omitted).

■ Unlike the Fifth Circuit, other courts have not limited the reasonable man test to the custom and practice of the industry. In *Cape & Vineyard Div. v. OSHRC,* 512 F.2d 1148 (1 Cir. 1975), the First Circuit interpreted 29 C.F.R. § 1910.132(a) to incorporate a reasonable man test which went beyond the custom and practice of the industry:

[A]n appropriate test is whether a reasonably prudent man familiar with the circumstances of the industry would have protected against the hazard. [citations omitted]. We would expect, most often, that reference to industry custom and practice will establish the standard of conduct. There may, however, be instances where industry practice fails to take reasonable precautions against hazards generally known in the industry; in such event it may not be unfair to hold the employer to a standard higher than that of actual practice.

512 F.2d at 1152; *see Brennan v. Smoke-Craft, Inc.,* 530 F.2d 843, 845 (9 Cir. 1976). We agree with the First and Ninth Circuits that the reasonable man test should not be limited to the custom and practice of the industry. While the custom and practice of most industries will adequately protect employees from hazardous conditions, the inquiry must be broad enough to prevent an industry, which fails to take sufficient precautionary measures against hazardous conditions, from subverting the underlying purposes of the Act. In determining whether Bristol violated § 1926.28(a), the appropriate inquiry is whether under the circumstances a reasonably prudent employ-

er familiar with steel erection would have protected against the hazard of falling by the means specified in the citation.

## III

■ While we agree that the citation under § 1926.28(a) was proper, we think the Commission erred in its conclusion that Bristol must bear the burden of proving the infeasibility of the method of abatement as an affirmative defense to the citation. Such a conclusion ignores the clear wording of 29 C.F.R. 2200.73(a) which provides: "In all proceedings commenced by the filing of a notice of contest, the burden of proof shall rest with the Secretary." The breadth of the burden cast upon the Secretary was recognized early on by Judge Skelly Wright in his landmark opinion in *National Rlty. & Constr. Co., Inc. v. OSHRC,* 160 U.S.App. D.C. 133, 489 F.2d 1257, 1263 (1973):

Published regulations of the Commission impose on the Secretary the burden of proving a violation of the general duty clause. When the Secretary fails to produce evidence on all necessary elements of a violation, the record will—as a practical consequence—lack substantial evidence to support a Commission finding in the Secretary's favor. That is the story of this case. It may well be that National Realty failed to meet its general duty under the Act, but the Secretary neglected to present evidence demonstrating in what manner the company's conduct fell short of the statutory standard. Thus the burden of proof was not carried, and substantial evidence of a violation is absent. (Footnotes omitted.)

■ The burden resting upon the Secretary in a case such as the one before us was succinctly stated by the First Circuit in *Cape & Vineyard Div. v. OSHRC, supra,* where the court stated:

In the absence of evidence from those qualified to express such an opinion that further protective equipment was necessary and should have been required on the field-side primary wires and, clamps, we hold that the Commission's finding of a violation of the safety standard was not supported by substantial evidence.

512 F.2d at 1155. In *B. & B. Insulation, Inc. v. OSHRC, supra,* the Fifth Circuit reached a similar conclusion on the question of the burden of proof:

The Secretary has the burden of proving all elements of a violation. 29 C.F.R. § 2200.73. In this case that burden included a demonstration that a reasonable insulation industry employer would have used safety belts where B&B did not.

583 F.2d at 1372.

Where the Secretary, in the absence of a specific regulation, elects to proceed under a general safety standard, as a matter of fundamental fairness it is

[o]nly by requiring the Secretary, at the hearing, to formulate and defend *his own* theory of what a cited defendant should have done [that] the Commission and the courts assure evenhanded enforcement of the general duty clause. [Footnote omitted]. * * * To assure that citations issue only upon careful deliberation, the Secretary must be constrained to specify the particular steps a cited employer should have taken to avoid citation, and to demonstrate the feasibility and likely utility of those measures.

*National Rlty. & Constr. Co., Inc. v. OSHRC, supra,* 489 F.2d at 1268. Since there was nothing in the record to demonstrate that a reasonably prudent employer familiar with steel erection would have protected against the hazard of falling by the means specified in the citation, the Commission's finding of a violation of the § 1926.-28(a) general safety standard was not supported by substantial evidence. Accordingly, the order of the Commission is reversed and this case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

WIDENER, Circuit Judge, concurring:

I concur in the opinion of the court, as well as in the result, and I would add a word.

It is my understanding that we hold that because no particular specific standard has been applied to the condition and area pertaining here, that is to say, workmen working at a distance lower than 25 feet, that the general standards may yet apply to fill in this gap from the ground (or the first surface which a workman would hit when falling) up to a distance of 25 feet above it.

The fact situation before us here is covered by the example given in 29 C.F.R. § 1910.5(c)(1) cited in footnote 12 of the opinion of the court. No particular specific standard has been issued which covers workmen working at a height of 16 feet above the surface which they would hit if they fell, so the condition and area involved in this case have not been covered by a particular specific standard. Had they been covered, of course, the particular specific standard would apply in accordance with § 1910.5(c)(1), and the general standard then could not be used to require another duty for a condition and area already so covered by a specific regulation.