**WEST VIRGINIA MANUFACTURERS ASSOC., a nonprofit West Virginia corporation, Plaintiff,**

v.

**STATE OF WEST VIRGINIA and Lawrence Baker, Commissioner of Labor of the State of West Virginia, Defendants,**

United Steelworkers of America, AFL–CIO–CIC and Paul Rusen, Director District 23, United Steelworkers of America, AFL–CIO–CIC, Defendant-Intervenor.

Civ. A. No. 81–2477.

United States District Court, S. D. West Virginia, Charleston Division. July 1, 1982.

George G. Guthrie, Spillman, Thomas, Battle & Klostermeyer, Robert B. King, Charleston, W. Va., for plaintiff.

Stanley Hostler, Charleston, for plaintiff-intervenor.

Leonard B. Knee, Asst. Atty. Gen., Environmental Task Force, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION

KIDD, District Judge.

Plaintiff, West Virginia Manufacturers Association, filed this civil action on November 18, 1981, seeking declaratory and injunctive relief against the State of West Virginia and her Commissioner of Labor. The complaint seeks a judgment declaring *W.Va.Code* § 21–3–18 (hereinafter "the Act") and the administrative regulations promulgated thereunder unconstitutional or void. Plaintiff also seeks injunctive relief prohibiting the defendants from enforcing the Act and administrative regulations. Defendants answered, *inter alia*, that the Act and regulations are not unconstitutional and therefore plaintiff should be denied all relief.

A hearing was conducted on plaintiff's Motion for Preliminary Injunction. Certain evidence was taken and the Court enter-tained extensive argument from all parties. At the conclusion of the hearing, the Court, on December 15, 1981, entered a Temporary Restraining Order enjoining and restraining defendants from enforcing the Act and regulations. On December 18, 1981, the Court entered its Opinion and Order denying plaintiff's "Motion for Preliminary Injunction and Dissolving Temporary Restraining Order", with such dissolution to become effective on December 21, 1981 as of 5:00 p.m. "Plaintiff's Motion for Injunction Pending Appeal" was denied by separate order entered that same day. On December 21, 1981, plaintiff filed its "Notice of Appeal" from the Court's order denying preliminary injunctive relief; plaintiff also filed that day a Motion for Injunction Pending Appeal and appeared before United States Circuit Judge K. K. Hall who granted that motion. Judge Hall's order does not affect the jurisdiction of this Court to rule upon the merits. On March 13, 1982, the Court again entertained oral argument from the parties. The matter has been fully briefed and has been submitted to the Court for decision.

Plaintiff challenges the Act and regulations on several grounds: (1) that the title to the Act is defective because it does not inform of criminal penalties which may be imposed; (2) that the Act is an unconstitutional delegation of legislative authority to the state's commissioner of labor; (3) that the Act has been preempted by the federal Occupational Safety & Health Act of 1970; (4) that the Act is void for vagueness under the Due Process Clause of the Fourteenth Amendment; and (5) that the Act unconstitutionally discriminates among employers and thus is a denial of equal protection. The Court will address the issues in the order just stated.

### I. *Defective Title*

In Count IV of its complaint the plaintiff alleges that the Act is unconstitutional because the title of the Act fails to inform those subject to its provisions of criminal penalties which may be imposed for violations of the Act. This claim is based upon *W.Va.Const.* art. 6 § 30 which provides in part:

No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed . . .

The purpose of this constitutional provision is two-fold: to prevent concealment of the true purpose of an act from the public and the legislature and to advise the public and the legislature of the contents of the proposed act. *See State ex rel. Davis v. Oakley*, 156 W.Va. 154, 191 S.E.2d 610 (1972). The section is to be liberally construed in favor of the act and all doubt should be resolved in favor of the constitutionality of the act under attack. *See generally, Chesapeake & O. R. R. v. Patton*, 9 W.Va. 648 (1876).

The title under attack here reads "Hazardous chemical substances; notice to employees; reports to commissioner; penalties." Plaintiff argues the title is defective because "penalties" is insufficient to advise the public that the penalties are criminal in nature. Defendant argues that the title is sufficient notice under the West Virginia Constitution and would induce a person interested in the subject matter of the Act to read the Act itself. Both parties rely upon *State ex rel. Myers v. Wood*, 154 W.Va. 431, 175 S.E.2d 637 (1970).

In *Myers*, the fatally defective title made no mention whatsoever of the word "penalty". The title in question here clearly indicates that the Act contains "penalties" and the Court is of the opinion, applying the rule of liberal construction, that the title is sufficient to give notice to the legislators and, more particularly, to the public in a general way of what is contained in the statute. The title of the Act is sufficient to induce anyone interested in the subject matter to read the statute itself. The West Virginia Constitution requires no more.

## II. *Unconstitutional Delegation of Legislative Power to the Commissioner of Labor*

■ Plaintiff complains that the Act unconstitutionally delegates legislative power to the Commissioner of Labor, primarily because the Act does not contain standards adequate to temper the grant of legislative authority and because the Act purports to give an administrative agency the power to make *in futuro* designations of a list and to make those designations be subject to criminal penalties. The portion of the Act under question here reads as follows:

(1) It is declared the policy of this State to require employers to disclose to employees the hazards of exposure in the work place to hazardous or toxic chemical substances and materials. For this purpose, the commissioner of labor shall establish and maintain, by rule or regulation, a list of chemical substances and materials which have been determined or are suspected to be hazardous or toxic to the health of employees who may be exposed to them in the course of employment. In establishing and maintaining such list, the commissioner may give consideration to any list made or hereafter made by the secretary of labor of the United States identifying or proposing to identify chemical substances and materials as hazardous or toxic, or setting standard levels of safe exposure thereto, as the same are published from time to time in the federal register. The commissioner shall publish and update at least annually, such list of substances and materials and shall include in the publication thereof, for each listed substance or material, any standard levels of safe exposure published by said secretary in the federal register, giving due consideration to any changes made or proposed by said secretary in the secretary's list of hazardous or toxic chemical substances and materials, or in any standard levels of safe exposure established or proposed from time to time by said secretary, as the same are published in the federal register.

(b) The commissioner shall make copies of such list prepared under this section available to any employer requesting the same: provided, that the commissioner shall limit such list to no more than six hundred such substances and materials to

be selected from the lists included in 29 Code of Federal Regulations 1910.1000, Subpart Z, which the commissioner elects to include because of either frequency of use in the state, frequency of exposure or overexposure thereof to workers in the state, the seriousness of the effects of such exposure or other reason which the commissioner determines to be sufficient.

The plaintiff does not question the power of the legislature to delegate legislative authority in this area of the law but rather complains of inadequate guidelines. The general rule to be applied describes a proper delegation of authority to be on where the legislature has laid down a complete and definite declaration of policy and established objective standards or guidelines describing the subject matter or the field wherein the legislation shall apply. *See generally* 16 Am.Jr.2d *Constitutional Law* § 339. This general rule must be applied liberally since the constitutional powers of the legislature are particularly broad in matters concerning the health of the state's citizens. *See State ex rel. Scott v. Conaty*, 155 W.Va. 718, 187 S.E.2d 119 (1972). Both parties rely upon *State v. Grinstead*, 157 W.Va. 1001, 206 S.E.2d 912 (1974), and the Court finds *Grinstead* particularly instructive upon this issue.

In *Grinstead*, the defendant challenged the power of the Board of Pharmacy to expand a list of proscribed drugs by adding to the list substances developed and derived from barbituric acid or amphetamines or any substance which the state board, after investigation, had found and declared to be habit-forming because of its stimulant effect upon the central nervous system. The West Virginia Supreme Court of Appeals found this to be a lawful delegation of legislative authority, holding that the Dangerous Drugs Act, *W.Va.Code* § 16–8B–1(1)(a), (b) and (c), contained adequate standards and limitations to protect the delegation of legislative prerogatives. *Grinstead, supra*, 206 S.E.2d at 919. Similarly, the legislation challenged by plaintiff here also contains adequate standards and limitations and is not an unlawful delegation on that basis. The act restricts the

Commissioner's discretion: he must draw his list of hazardous chemical substances from those designated in 29 C.F.R. 1910.-1000, Subpart Z. The substances must "have been determined or ... suspected to be hazardous or toxic to the health of employees who may be exposed to them in the course of employment." *W.Va.Code* § 21–3–18. His choice of substances is also to be guided by the frequency of use, frequency of exposure or overexposure, the seriousness of the effects of such exposure or "other reason which the Commissioner determines to be sufficient." These guidelines, when followed in light of the Act's stated legislative policy, form complete and adequate standards and limitations to protect the legislature's prerogatives. The Commissioner is not being vested with unfettered legislative authority; indeed, the Act clearly restricts his authority by providing for adequate guidelines.

*Grinstead* is also instructive when reviewing plaintiff's second contention. Plaintiff argues that the Act contravenes the West Virginia Constitution and *Grinstead* because it impermissibly authorizes an executive branch official to expand criminal acts *in futuro* and without limitation. The portion of the statute challenged in *Grinstead* because of *in futuro* aspects reads as follows:

"... any drug which, under the regulations promulgated in accordance with the Federal Food, Drug and Cosmetic Act of June, twenty-five, one thousand nine hundred thirty-eight, *or any amendment thereto, is* designated as dangerous or habit-forming: ..."
*W.Va.Code* § 16–8B–1(1)(d) (emphasis added).

The *Grinstead* court noted that, as a general rule, it is permissible for a legislative body to adopt by incorporation and reference conduct which previously has been declared unlawful by Congress or other legislative bodies and no constitutional infirmity attaches to this principle as it applies to law in existence at the time of the adoption by incorporation and reference. However, a delegation which attempts to adopt *future*

laws, rules or regulations is unconstitutional.

The holding in *Grinstead* is applicable here. While the language of § 21–3–18 differs from that of § 16–8B–1(1)(d), the end result desired is the same. *W.Va.Code* § 21–3–18 would permit and require the commissioner to update the list of hazardous or toxic chemical substances, "giving due consideration to any changes made or proposed by" the United States Secretary of Labor. As in *Grinstead*, the legislature has delegated its powers "so loosely as to permit another legislative body or executive board or agency to redefine and expand the criminal acts *in futuro* and without limitation." *Grinstead, supra* at 919. Such a delegation is constitutionally invalid. Purely legislative power can never be delegated; that power has been described as the authority to make a complete law. *See generally* 16 Am.Jur.2d *Constitutional Law* § 337. Furthermore, the West Virginia Constitution insures separation of powers between the three coordinate branches of government; the enactment of a statute is a legislative function and cannot be transferred to an administrative body.

Therefore, the attempt to delegate to the commissioner the authority to update his list by adding to his list the substances added to 20 C.F.R. § 1910.1000, Subpart Z, by the United States Secretary of Labor must fail because it is constitutionally invalid. The commissioner must select substances which were included in 20 C.F.R. § 1910.1000, Subpart Z, at the time the legislature enacted *W.Va.Code* § 21–3–18. The limitations found above to be sufficient in guiding the commissioner in formulating the initial listing of chemical substances are not sufficient as to *in futuro* acts or amendments to the federal regulations.

■ Plaintiff further argues that the delegation of legislative authority is unconstitutional for two additional reasons: (1) the commissioner failed to follow the statutory requirements in promulgating the administrative regulations under the Act, and, (2) the commissioner failed to follow the West Virginia Administrative Procedures Act in promulgating the administrative regulations. After reviewing the testimony of the commissioner, the Court concludes he did follow the statutory requirements of § 21–3–18 in promulgating the administrative regulations. The Act requires the commissioner to select no more than 600 substances from 29 C.F.R. § 1910.1000, Subpart Z; his selection is to be guided by "either frequency of use in the state, frequency of exposure or overexposure thereof to workers in the state, the seriousness of the effects of such exposure or other reason which the commissioner determines to be sufficient." *W.Va.Code* § 21–3–18(b). The commissioner testified that he did not consider frequency of use or exposure or overexposure nor did he consider the seriousness of the effects of exposure when he formulated the administrative regulations. He did list all substances in 20 C.F.R. § 1910.1000, Subpart Z for which there are no federal standards and did so because the United States Secretary of Labor had more expertise in this area. The commissioner believed, *inter alia*, that if the Secretary of Labor found the chemical to be hazardous or toxic, that was a sufficient reason to list the substance. Thus the commissioner's selection was made, in large part, under the fourth criteria in the Act, the "other reason" provision. This criteria is not unduly broad nor is it vague. As discussed in defendant's brief, application of the principle of *ejusdem generis* appropriately restricts this fourth criteria. The commissioner's reason for placing a substance on the list comports with the statutory guidelines. It is true that he could have made additional or different findings but such are not required by the Act. The Court finds that the commissioner did adhere to the statutory guidelines in formulating the administrative regulations.

■ The West Virginia Administrative Procedures Act provides in part:

Before any rules or regulations mentioned in section five [§ 29A–3–5] shall be effective, the agency shall promulgate the findings and determinations required and state fully and succinctly the reasons therefor and file such findings and deter-

minations in the state register. The statement of reasons and a transcript of all evidence received pursuant to notice shall be public records and shall be carefully preserved by the agency and be open for public inspection and copying for a period and term of not less than five years from the date of the hearing.

*W.Va.Code* § 29A–3–6.

The commissioner has not complied with this provision. The defendants admit in their brief that the commissioner must follow *W.Va.Code* § 29A–3–5 which provides for public notice and hearing upon proposed regulations. The commissioner did give notice and conduct a public hearing. However, he has not filed findings and determinations in the state register. The commissioner must comply with *W.Va.Code* §§ 29A–3–5 and –6 before the proposed regulations can take effect. Accordingly, the Court holds that the proposed regulations are invalid because of the commissioner's failure to act in accordance with *W.Va. Code* § 29A–3–6.

### III. *Preemption*

■ During the preliminary injunction hearing the Court ruled from the bench that *W.Va.Code* § 21–3–18 was not preempted by the Federal Occupational Safety & Health Act of 1970; the Court reiterated its position in its "Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction and Dissolving Restraining Order" entered December 18, 1981. After reexamining the authorities cited by the parties and the evidence herein, the Court remains of the opinion that *W.Va.Code* § 21–3–18 is not preempted by OSHA.

The Occupational Safety & Health Act of 1970 provides in part:

Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

29 U.S.C. § 667(b).

Plaintiff argues that there is a federal standard in existence under 29 U.S.C. § 655 and that the State of West Virginia must comply with § 667(b) before it can regulate in this area; since West Virginia has not submitted a State plan for the development of such standards and their enforcement, then the state is precluded from regulating in this area because of preemption.

The defendants argue that there is no federal standard in effect under 29 U.S.C. § 655 and, accordingly, the state is not prevented from asserting jurisdiction. This argument is predicated upon 29 U.S.C. § 667(a) which reads:

(a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

The meaning of the word "standard" becomes rather critical in attempting to analyze the conflicting positions of the parties. Plaintiff believes the Court in its earlier ruling equated lack of regulation with a failure to promulgate standards, thereby confusing the issue. Perhaps in this third attempt the Court can clarify its ruling so as to eliminate the confusion.

29 U.S.C. § 655 directs that

The Secretary shall, as soon as practicable during the period beginning with the effective date of this chapter and ending two years after such date, by rule promulgate as an occupational safety or health standard any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees. In the event of conflict among any such standards, the Secretary shall promulgate the standard which assures the greatest protection of the safety or health of the affected employees.

**1254**

Pursuant to this provision the Secretary did adopt certain national consensus standards relating to toxic and hazardous substances. Included in those standards are permissible safe exposure levels. 29 C.F.R. § 1910.-1000, Subpart Z. Not included in that standard is a posting or notice requirement similar to that in *W.Va.Code* § 21–3–18. (Those substances more extensively regulated by OSHA, such as asbestos, are frequently required to be labeled. Posting of caution signs may be required. *See e.g.* 29 C.F.R. § 1910.1001(g). However, these more extensively regulated substances, some twenty in number, are not included on the commissioner's list and therefore are not regulated by *Code* § 21–3–18; the defendants concede that a "posting standard" exists as to these 20 substances.).

The standard that the State of West Virginia seeks to implement is not a "level of exposure" standard. National consensus standards exist as to exposure; both the federal and state regulations adopt those standards. The standard that the State of West Virginia seeks to implement is a "notice and posting" standard, designed to inform employees of toxic or hazardous substances in the workplace, of permissible exposure levels and of the symptoms of overexposure to those substances. The question thus becomes has the Secretary of Labor promulgated a notice and posting standard relative to those substances set forth in the administrative regulations under *Code* § 21–3–18.

Plaintiff argues that 29 U.S.C. § 655(b)(7) requires the Secretary to include within the standard whatever labels or other forms of warning that are necessary to protect employees from the hazards to which they may be exposed and that the absence of notice and posting requirements represents an affirmative finding by the Secretary that none are necessary under the statute and constitutes part of the standard for each of the listed hazardous substances. At first blush this argument is appealing. But a review of the statutory and regulatory provisions and the case law convinces the Court that plaintiff's argument must be rejected.

The term "occupational safety and health standard" is defined by OSHA to mean "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8). Injecting this definition into 29 U.S.C. § 655(a) leads the Court to the same conclusion it reached earlier. The Secretary has adopted national consensus standards relating to *exposure level* pursuant to 29 U.S.C. § 655(a). The Secretary has not adopted a standard as to notice and posting of Subpart Z substances. As defendants point out, Subpart Z substances were promulgated under 29 U.S.C. § 655(a) and not 29 U.S.C. § 655(b). Plaintiff's argument would be persuasive only as to a standard promulgated under 29 U.S.C. § 655(b); the argument is inapplicable to a standard promulgated pursuant to § 655(a).

Accordingly, the Court concludes that there is no federal standard relative to notice and posting of Subpart Z substances. Therefore 29 U.S.C. § 667(a) permits the State of West Virginia to assert jurisdiction over this issue. The matter has not been preempted by OSHA.

### IV. *Void for Vagueness*

Plaintiff argues that the Act is void for vagueness under the Due Process Clause of the Fourteenth Amendment because of words or phrases within the Act such as "work area", "work site", "conspicuously", and "readily visible". The Court agrees with plaintiff that a criminal statute must spell out and adequately define the prohibited conduct in order to pass constitutional muster under the Fourteenth Amendment. As plaintiff concedes, "[i]n the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972), citing *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952).

More particularly, the standard to be applied in this Circuit when reviewing allegedly vague terms in health and safety legislation is set forth in *Bristol Steel & Iron Works, Inc. v. Occupational Safety & Health Review Commission*, 601 F.2d 717 (4th Cir. 1979). In *Bristol Steel* the court held that, to satisfy due process requirements, a "reasonably prudent" employer test should be utilized. In so holding the court rejected a "reasonable man" test limited to custom and practice of the industry. Thus the court recognized the remedial nature of health and safety statutes and encouraged liberal construction in favor of those the statutes are designed to protect. *Bristol Steel, supra* at 721–723.

■ In applying that test here the Court concludes that *W.Va.Code* § 21–3–18 is not void for vagueness. The terminology employed gives fair notice to a person of ordinary intelligence that it proscribes certain conduct. The ordinary plain meanings of the terms are easily ascertainable within the context of the Act itself. The commissioner is under no affirmative duty to promulgate regulatory "definitions" in this instance.

As to plaintiff's charge that the commissioner's proposed selective interpretation and enforcement of the Act will be violative of the Due Process Clause, the Court refers the parties to *Perry v. Barker*, 289 S.E.2d 423 (W.Va.1982), a case decided subsequent to the submission of briefs in the case at bar. In *Perry* the commissioner contended that insufficient funds and staff prevented his enforcement of the bonding provisions of the Wage Payment & Collection Act, *W.Va.Code* § 21–5–14. The court granted a writ of mandamus, compelling the commissioner to promptly and effectively enforce the law. The commissioner is undoubtedly aware of that ruling; failure to promptly and effectively enforce the hazardous chemical substances act for similar reasons will no doubt result in a similar ruling upon proper challenge. The meaning of the Act is clear; any future attempt by the commissioner to unduly restrict the application of the Act can be more properly challenged at that time.

## Equal Protection

■ Plaintiff points to two classifications in the Act and argues that because of the arbitrariness of those classifications the Act is violative of equal protection. The classifications complained of exclude from the Act's coverage any coal mine, coal mining or coal processing plant and any agricultural or horticultural activity and exclude any employer of less than 10 employees. Plaintiff argues that these classifications are not reasonable in light of the Act's stated purpose.

The Act declares that it is "the policy of this State to require employers to disclose to employees the hazards of exposure in the work place to hazardous or toxic chemical substances and materials." *W.Va.Code* § 21–3–18(a). The Act requires an employer to post a warning notice in the work area where such substance is used; the notice must identify the substance being used and must also identify the common symptoms of overexposure. *W.Va.Code* § 21–3–18(c). The legislature's purpose in enacting *W.Va. Code* § 21–3–18 was to insure that employees exposed to certain toxic substances at work would know of such exposure and would be warned of potential harm from overexposure. Since the Act is clearly underinclusive in that it does not apply to every employee in the State, the court must determine if the classifications in the Act are reasonable in light of the Act's purpose. *See Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S.Ct. 1029, 1035, 31 L.Ed.2d 349 (1971).

Ordinarily, a court will uphold any classification based "upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy ..." *Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 443, 3 L.Ed.2d 480 (1959). Defendants argue that such facts exist or can be presumed to exist here and that the Act is not violative of equal protection guarantees.

The Court turns first to the classification which essentially excludes three generic activities: coal mining, horticulture and agri-

culture. Defendants point to *W.Va.Code* § 21–3–14, which exempts coal mining properties and operations under the supervision of the department of mines from all provisions of this article, and argues that "[t]he legislature obviously determined that there should be no chance for unnecessary duplication of effort between the WV Department[s] of Mines and Labor." With this the Court must agree. The mining industry is extensively regulated within this state with a keen eye focused upon employee health and safety. Such an exclusion from the coverage of *W.Va.Code* § 21–3–1 is reasonable.

As to horticulture and agriculture, defendants contend that it must be presumed that the legislature was aware of federal preemptive provisions in OSHA which foreclose regulation under OSHA in horticulture and agriculture since these areas are regulated by other federal agencies. This, defendants say, evinces a congressional intent to avoid duplication at the federal level and this intent was simply carried through into West Virginia law. It appears to the Court that these areas are regulated under federal law, *see, e.g.*, Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.*, and it may reasonably be presumed that the legislature was aware of such.

As to the second classification which excludes employers having fewer than 10 employees from the Act's coverage, the Court concludes that this exclusion is also grounded upon a rational basis. Many statutory schemes seeking to correct or ameliorate perceived evils in the work place are applicable to employers only if a certain number of employees are retained by the employer. Workmen's Compensation is one example. State labor law in general is another. Such an exclusion should not be interpreted to mean that an employee who is not afforded coverage under such an act is of less concern to the state. The state's legislative body must balance many factors and interests when enacting remedial legislation. It is perfectly rational to presume that greater evil may exist among greater numbers. The legislature undoubtedly also considered the limited resources of the State needed to implement and enforce the Act, both as to personnel and money. Plaintiff has failed to prove the arbitrariness of this exclusion.

This Court firmly adheres to the rule that the judgment of legislature is entitled to great deference. In analyzing the plaintiff's equal protection challenge the Court has given great deference to that judgment. The legislature's judgment does not offend common sense, it has a rational basis and it will be sustained by this Court. As the court noted in *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970), "the Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." This conclusion is a natural sequel to a much earlier statement of the court, that of Justice Holmes in *Bain Peanut Co. v. Pinson*, 282 U.S. 499, 51 S.Ct. 228, 75 L.Ed. 482 (1931): "We must remember that the machinery of government would not work if it were not allowed a little play in its joints." *Id.* at 501, 51 S.Ct. at 229.

Plaintiff's final argument in this area concerns the commissioner's position as to whom he believes the Act should be applied. The Act applies to "[a]ny employer of ten or more employees using or producing any such listed hazardous chemical substance or material ..." *W.Va.Code* § 21–3–18(c). The defendants have urged the Court to apply the plain meaning rule as to many issues in this case; this issue is no different. What the commissioner thinks the Act states, based on very sketchy legislative history, and what the Act in fact plainly states presents little difficulty to the Court. The Commissioner testified that the Act, as he understood it, applied to employers who either produce the listed substances or use them in their manufacturing processes. Such a reading of the Act is inappropriately restrictive. The words "any," "producing," and "using" cannot be so restricted in meaning. According the statute its plain meaning, many of plaintiff's arguments evaporate. The Act does apply to hospitals and to boards of education or to "*any* em-

ployer ... *using* or *producing*" the substances listed. If the commissioner attempts to selectively enforce the Act, then plaintiff or any other employer will have various remedies, including that of injunctive relief.

*Conclusions*

Accordingly, the Court finds that:

(1) The title of *W.Va.Code* § 21–3–18 is not defective because of failure to inform of possible criminal penalties;

(2) the Act is not an unconstitutional delegation of legislative authority to the state's commissioner of labor except as it purports to adopt or permit consideration of *future* regulatory amendments or proposed amendments to 29 C.F.R. 1910.1000, Subpart Z;

(3) the conduct regulated by *W.Va.Code* § 21–3–18 has not been preempted by the federal Occupational Safety & Health Act of 1970;

(4) the Act is not void for vagueness under the Due Process Clause of the Fourteenth Amendment;

(5) the Act does not deny plaintiff equal protection under the law, and

(6) the proposed regulations promulgated pursuant to *W.Va.Code* § 21–3–18 are void for failure of the agency to comply with *W.Va.Code* §§ 29A–3–5 and –6.

Judgment shall be entered in accordance with the above.

The Clerk is directed to transmit certified copies of this Memorandum Opinion to counsel of record herein.