## THE CITY OF DETROIT v. THE FORT WAYNE & BELLE ISLE RAILWAY COMPANY.

*Street railways—Municipal control—Sale of tickets—Ordinances— Penalty.*

1. The rights and franchises of a street-railway company are not destroyed or unreasonably impaired by an ordinance requiring it to sell to persons applying therefor, upon all of its cars, tickets, to be good for transportation over its entire route or any portion thereof, traveling continuously either way, between certain hours, at the rate of 8 tickets for 25 cents.

2. A reservation in the ordinance under which a street-railway company is operating, of the right "to make such further rules, orders, or regulations as may from time to time be deemed necessary to protect the interest, safety, welfare, or accommodation of the public," includes the right to enact an ordinance requiring the company, for the accommodation of the public, to keep tickets for sale upon its cars in the manner stated.

3. It is competent to provide for the enforcement of such an ordinance by making each day's neglect to comply with its provisions an offense punishable by fine, and to provide for the collection of such fine in an action at law.

4. The following general propositions are summarized from the opinion of Mr. Justice McGRATH:

   *a*—The right of a municipality, under the train-railway act,

to refuse its consent to the operation of a street railway in its streets, is an absolute one, and its power, in the first instance, to impose conditions, is unlimited; and in the imposition of further conditions after giving such consent, it is only necessary that it keep within the scope of the reservations in the original ordinance.

*b*—An ordinance may be good in part, although bad in part; and it is only necessary that the good and bad parts be so distinct and independent that the latter may be eliminated, and that the former contain all of the essentials of a complete ordinance.

*c*—Irrespective of express authority given in its charter, a municipality has an implied power to provide for the enforcement of its ordinances by reasonable and proper fines.

*Mandamus.* Argued April 18, 1893. Granted April 28, 1893.

Relator applied for *mandamus* to compel respondent to comply with the provisions of an ordinance regarding the sale of tickets. The facts are stated in the opinion.

*John J. Speed,* for relator.

*Edwin F. Conely* and *Orla B. Taylor,* for respondent.

McGRATH, J. Respondent; by virtue of an ordinance adopted in 1865, is operating a street railway in the city of Detroit, and this is an application for a *mandamus* to compel it to comply with the provisions of an ordinance enacted in January, 1893, requiring it to "issue and sell, by its conductors or other duly-authorized agents, to persons applying therefor, upon each and every car operated by said company within the limits of the city of Detroit, tickets, to be good for transportation over the entire route of said company, or any portion thereof, traveling continuously either way, between" certain hours, at the rate of 8 tickets for 25 cents. The ordinance contains separate sections making each day's neglect to comply therewith an offense punishable by fine, and providing for the collection of such fine in an action at law.

Respondent, as assignee of the Ft. Wayne & Elmwood Railway Company, is operating a street railway under an ordinance passed January 31, 1865, and the amendments thereto since enacted. The rate of fare was originally fixed at 5 cents, but by an amendatory ordinance passed in 1889 it was provided that said company should issue and sell tickets good for transportation between certain hours at the rate of 8 tickets for 25 cents. Respondent accepted that ordinance, as it had those previously enacted. It, however, refuses to accept the ordinance enacted in January, 1893, or to comply with its terms. It answers that such tickets are kept for sale at certain places; that there are other street-railway companies operating railways within the limits of the city of Detroit, not regulated in respect of tickets by this or any other ordinance; and sets forth the following reasons why it should not be compelled to comply with the provisions of the ordinance:

1. The company is furnishing the tickets in reasonable quantities and in reasonable places.

2. The ordinance is illegal and void in this:

*a*—That the common council of the city of Detroit·has no authority to pass any such ordinance.

*b*—That the relations of the city of Detroit with the respondent are of a contractual nature, and the same cannot be, in this regard, enforced by penal ordinance.

*c*—That the ordinance seeks to regulate the internal and business affairs of the respondent.

*d*—That the ordinance is penal, and invalid, because it undertakes to select one individual and punish him for a violation of it.

*e*—That the ordinance is unequal in its operation.

*f*—That the ordinance is not a proper exercise of the police power delegated to the municipality.

The Ft. Wayne & Elmwood Railway Company was organized in February, 1865, under chapter 94 of Howell's Statutes. Said act was subject to amendment, and in 1867 the following section was added thereto:[1]

---

[1] How. Stat. § 3527.

"All companies or corporations formed for such purposes shall have the exclusive right to use and operate any street railways constructed, owned, or held by them: *Provided,* that no such company or corporation shall be authorized to construct a railway under this act through the streets of any town or city without the consent of the municipal authorities of such town or city, and under such regulations and upon such terms and conditions as said authorities may from time to time prescribe: *Provided, further,* that after such consent shall have been given and accepted by the company or corporation to which the same is granted, such authorities shall make no regulations or conditions whereby the rights or franchises so granted shall be destroyed or unreasonably impaired, or such company or corporation be deprived of the right of constructing, maintaining, and operating such railway in the street in such consent or grant named, pursuant to the terms thereof."

The ordinance of 1865, under which said company began operations, contained the following reservation, which is still in force:

"It is hereby reserved to the common council of the city of Detroit, the right to make such further rules, orders, or regulations as may from time to time be deemed necessary to protect the interest, safety, welfare, or accommodation of the public in relation to said railway."

In the absence of this reservation in the ordinance, it could not be said that the rights and franchises of the respondent are destroyed or unreasonably impaired by the requirement sought to be enforced; but, independently of this statutory provision, the reservation contained in the ordinance itself, viz., "to make such further rules, orders, or regulations as may from time to time be deemed necessary to protect the interest, safety, welfare, or accommodation of the public," certainly includes the right to enact an ordinance providing that the company shall, for the accommodation of the public, keep tickets for sale upon its cars. Ordinances containing grants are construed liberally in favor of the public. It cannot be contended

that the relation created by the ordinance is contractual, and at the same time that the reservation was of the right to enact police regulations only. The right to exercise police power exists independent of the reservation, and could not be bartered away. The contract is not unilateral, intended as a shield for respondent alone.

The right of a municipality, under the statute, to refuse its consent to the operation of a street railway in its streets, is an absolute one, and its power, in the first instance, to impose conditions, is unlimited. The nature of the conditions imposed does not depend upon other grants of power. Respecting the imposition of further conditions after consent given, it is only necessary that the municipality keep within the scope of the reservation.

In the recent case of *Sternberg v. State* (Neb.), 54 N. W. Rep. 553, a similar ordinance was sustained under general provisions subjecting the company "to all reasonable regulations in the construction and use of said railway which may be imposed by ordinances," and empowering the municipality "to fix and determine the fare charged."

The court held that the power to fix rates of fare necessarily carried with it all incidents necessary to carry the power into effect; that "a street railway has no depots; its stations are the street corners, and its business with the public is conducted on its cars;" and that it was not unreasonable to require the company to sell its tickets at its place of doing business.

In *Railway Co. v. Berry* (Ky.), 18 S. W. Rep. 1026, it was held that an ordinance requiring a street-car company to put a driver and a conductor on each car was a proper exercise of the city's police power, and not an impairment of the company's rights, not being unreasonable or oppressive. See, also, *Railway Co. v. Philadelphia*, 58 Penn. St. 119.

In the present case the power exercised was that reserved in the original grant.

· The only question that remains is whether or not the penal provisions of the ordinance can be sustained. Even if invalid, the · other provisions of the ordinance do not necessarily fall with them. It is well settled that an ordinance may be good in part, although bad in part. It is only necessary that the good and bad parts be so distinct and independent that the invalid parts may be eliminated, and that what remains contain all the essentials of a complete ordinance. Dill. Mun. Corp. § 421; *State v. Hardy*, 7 Neb. 377; *St. Louis v. Railroad Co.*, 89 Mo. 44, and 14 Mo. App. 221.

The general rule is that ordinances should be general in their nature, and impartial in their operation. Ordinances, however, containing grants, are of necessity several and independent of each other. The conditions imposed and requirements exacted are necessarily different, depending upon many and varied considerations. These ordinances are adapted to these varying considerations and circumstances. · An ordinance prohibiting a particular railroad corporation by name from running locomotives by steam on a specific street does not contravene the principle stated. *Railroad Co. v. Richmond*, 96 U. S. 521. It does not follow that a like reservation is contained in every other railway ordinance. While it is true that ordinances of this class have been held to partake of the nature of contracts, yet they are none the less by-laws, and have the force and effect, in favor of the municipality, and against persons bound thereby, of laws passed by the legislature of the state. The power to enact an ordinance involves all the incidents necessary to give effect thereto. The charter of the city of Detroit (section 142) empowers the common council to punish the violation of any ordinance by imposing a fine. Irrespective of this express authority, a municipality has an implied power to provide for the enforcement of its ordinances by reasonable and proper fines. 1

Dill. Mun. Corp. § 338. The reservation in an ordinance to impose further conditions involves the right to provide for the enforcement of such conditions in the manner provided by law. The application of the rule contended for to this class of cases would prevent this method of enforcement of any condition imposed by virtue of a reservation of this character. The common council having the power to impose the condition in question by ordinance, it has, as incident thereto, the power to provide for its enforcement. The general rule above stated must be held to apply only to regulations the authority to enact which depends solely upon the exercise of police powers, and not to conditions imposed by an ordinance enacted by virtue of a reservation in a by-law which partakes of the character of a contract.

The ordinance is therefore valid, and the writ of *mandamus* must issue as prayed.

The other Justices concurred.