714 F.2d 308
 14 Envtl. L. Rep. 20,001, 11 O.S.H. Cas. (BNA) 1625,
1983 O.S.H.D. (CCH) P 26,635
 WEST VIRGINIA MANUFACTURERS ASSOCIATION, a nonprofit West
Virginia Corporation, Appellant,
v.
STATE OF WEST VIRGINIA and Lawrence Barker, Commissioner of
Labor of the State of West Virginia, and United Steelworkers
of America, AFL-CIO-CLC and Paul Rusen, Director District
23, United Steelworkers of America, AFL-CIO-CLC, Appellees.
WEST VIRGINIA MANUFACTURERS ASSOC., a nonprofit West
Virginia corporation, Appellant,
v.
STATE OF WEST VIRGINIA and Lawrence Barker, Commissioner of
Labor of the State of WV, Appellees,
and
United Steelworkers of America, AFL-CIO-CLC and Paul Rusen,
Director District 23, United Steelworkers of
America, AFL-CIO-CLC, Appellees.
WEST VIRGINIA MANUFACTURERS ASSOC., a nonprofit West
Virginia corporation, Appellee,
v.
STATE OF WEST VIRGINIA and Lawrence Barker, Commissioner of
Labor of the State of WV, Appellants,
and
United Steelworkers of America, AFL-CIO-CLC and Paul Rusen,
Director District 23, United Steelworkers of
America, AFL-CIO-CLC, Third-Party Defendants.
 Nos. 81-2231(L), 82-1701 and 82-1729.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1983.
Decided Aug. 3, 1983.
 
 Robert B. King, Charleston, W.Va. (King, Betts & Allen; George G. Guthrie, Spilman, Thomas, Battle & Klostermeyer, Charleston, W.Va., on brief), for appellant.
 Leonard B. Knee, Asst. Atty. Gen., Charleston, W.Va. (Dennis M. Abrams, Deputy Atty. Gen., Charleston, W.Va., on brief) and Mary-Win O'Brien, Pittsburgh, Pa., for appellee.
 Before ERVIN and CHAPMAN, Circuit Judges and BRYAN, Senior Circuit Judge.
 ALBERT V. BRYAN, Senior Circuit Judge:
 
 
 1
 The West Virginia Manufacturers Association (the Association) urges us to disapprove, on State and Federal grounds, a statute duly enacted by the legislature of the State of West Virginia. We decline to do so, finding no fault in the enactment in any respect.
 
 
 2
 * The West Virginia Hazardous Chemical Substances Act, W.Va.Code § 21-3-18 (1981) (the Act), requires "[a]ny employer of ten or more employees using or producing any ... listed hazardous chemical substance ..." to post conspicuously in the work area where the chemical is used a warning notice which gives the name of the chemical and the common symptoms of overexposure. The Act directs the Commissioner of Labor to select the chemical substances he deems hazardous from a list compiled pursuant to Federal law and published at 29 C.F.R. § 1910.1000 (1982). His choice is to be guided by the frequency of use, frequency of exposure or overexposure, the seriousness of the effects of such exposure or overexposure, or other reasons which the Commissioner deems significant. He also is empowered to adopt all necessary rules and regulations. Proposed regulations were put forward for public comment and, after revision and a public hearing, were scheduled to become effective on December 16, 1981.
 
 
 3
 On November 18, 1981 the Association filed this civil action in the Federal Court for the Southern District of West Virginia seeking declaratory and injunctive relief against the State and Lawrence Barker, her Commissioner of Labor. The complaint sought a declaration that the Act and the regulations promulgated thereunder were unconstitutional and void, it sought too an injunction prohibiting their enforcement. After an evidentiary hearing, the Court entered a temporary restraining order enjoining enforcement of the Act and regulations. However, on December 18 the Court dissolved the TRO, and denied all further injunctive relief. The Association noted an appeal (No. 81-2231) and moved for an injunction pending appeal which Judge Hall of this Court granted.
 
 
 4
 Thereafter, in accordance with and as permitted by Judge Hall's order, the District Court proceeded to consider the remaining aspects of the Association's grievance. On July 1, 1982, the Court upheld the Act save for a provision permitting adoption of future regulatory amendments.[1] It also struck down the administrative regulations on grounds that they had been improperly promulgated under West Virginia law.[2] On July 27, 1982, the Association noted its appeal, (No. 82-1701) and, on August 9, the State filed a cross appeal (No. 82-1729). By order of this Court entered October 1, 1982, the three causes were consolidated.[3]
 
 
 5
 In our Nos. 81-2231 and 82-1701 the Association challenges the validity of the Act on the ground it fails to meet the requirements of West Virginia law and the Federal constitution. On cross appeal, No. 82-1729, the State seeks reversal of those aspects of the District Court's decision that were adverse to it. We now turn to these contentions in more specificity.
 
 II
 A. Title defects
 
 6
 Primary among the objections based on State law is the assertion that the statute is unconstitutional because its title does not reveal that violators may be subject to criminal penalties. The questioned title reads: "Hazardous Chemical Substances; notice to employees; reports to commissioner; penalties." Defect is laid to the word "penalties" which the Association deems insufficient to advise that the sanctions are criminal.
 
 
 7
 The West Virginia Constitution, on which this attack is grounded, provides, in part, that
 
 
 8
 [n]o act hereafter passed, shall embrace more than one object, and that shall be expressed in the title. But if any object shall be embraced in an act which is not so expressed, the act shall be void only as to so much thereof, as shall not be so expressed....
 
 
 9
 W.Va. Const. art. 6, § 30. The Supreme Court of Appeals of West Virginia has declared that the purpose of this section is to prevent concealment of the content of legislation.[4] Consequently, the dispositive question is whether "the title of the act was such that it should have provoked a reading of the act by a person interested in its subject matter." State ex rel. Graney v. Sims, 144 W.Va. 72, 105 S.E.2d 886, 892 (1958). West Virginia courts follow a rule of liberal construction when statutes are assailed for title deficiencies, resolving all doubts in favor of the questioned enactment. Chesapeake & Ohio Railroad v. Patton, 9 W.Va. 648 (1876).
 
 
 10
 Mindful of these principles, we agree with the District Court that the title under scrutiny here plainly advises of the Act's import and purpose. 542 F.Supp. at 1250. The word "penalties" connotes sufficiently that penal sanctions are contemplated and, as a whole, the title will induce any interested party to read the text of the statute.
 
 B. Delegation problems
 
 11
 Delegation problems are said to arise because the Act directs the Commissioner of Labor to establish the list of hazardous substances the use or production of which requires warning notices. This list is to be drawn from among those chemicals which pose a health risk, as determined by the U.S. Department of Labor now and in the future. At trial, the Association complained that the Act unconstitutionally delegates legislative power to the Commissioner of Labor because it does not contain standards adequate to temper this grant of legislative authority and because it purports to give an administrative agency the power to make in futuro amendments to the list which carry criminal penalties. The District Court rejected the challenge except insofar as the Act permitted the adoption of future regulatory amendments. 542 F.Supp. at 1252. In this Court, the Association urges affirmance of the latter holding and renews its earlier objections, seeking a determination that the Act is completely invalid on delegation grounds. Upon cross appeal the State seeks reversal of the District Court's judgment striking down the in futuro provisions.
 
 
 12
 With respect to this latter attack, we note that West Virginia has since enacted a new Administrative Procedures Act.[5] The effect of this enactment is to require that all rules and regulations adopted by any State agency be first presented to the legislature for ratification.[6] All other delegations of legislative authority to adopt substantive rules and regulations have been withdrawn.[7] In our view this exaction has mooted the charge that the Act's provision for future regulatory amendments offends the West Virginia Constitution.[8]
 
 
 13
 Still appropriate for our consideration, however, is the question whether the broad and general command to the Commissioner to maintain a list of hazardous chemical substances unconstitutionally confers on the executive a legislative role. In State v. Grinstead, 157 W.Va. 1001, 206 S.E.2d 912 (1974), a similar accusation was held meritless where the delegating law set forth standards and limitations adequate to protect the legislative prerogative.
 
 
 14
 The legislation questioned here directs the Commissioner to draw his list from those substances designated in 29 C.F.R. 1910.1000 (1982) as "hazardous or toxic to the health of employees who may be exposed to them in the course of employment." W.Va.Code § 21-3-18(a) (1981). Further strictures require him to consider the frequency of use, frequency of exposure or overexposure, and the seriousness of the effects of such exposure. Id. § 21-3-18(b). District Judge Kidd held, we think correctly, that
 
 
 15
 [t]hese guidelines, when followed in light of the Act's stated legislative policy, form complete and adequate standards and limitations to protect the legislature's prerogatives. The Commissioner is not being vested with unfettered legislative authority; indeed, the Act clearly restricts his authority by providing for adequate guidelines.
 
 
 16
 542 F.Supp. at 1251.
 
 C. Administrative procedure
 
 17
 Remaining State law matters concern the legality of the rules and regulations promulgated pursuant to the Act. The District Court struck the regulations, holding that the Commissioner of Labor did not file findings and determinations in the State register as required by the version of West Virginia's Administrative Procedures Act then in effect.[9] On cross appeal the State contests this holding.
 
 
 18
 When the Commissioner endeavored to promulgate the challenged rules, he was bound by W.Va.Code § 29A-3-6 (1980), which stated:
 
 
 19
 Before any rules or regulations mentioned in section five [§ 29A-3-5] shall be effective, the agency shall promulgate the findings and determinations required and state fully and succinctly the reasons therefor and file such findings and determinations in the state register. The statement of reasons and a transcript of all evidence received pursuant to notice shall be public records and shall be carefully preserved by the agency and be open for public inspection and copying for a period and term of not less than five years from the date of the hearing.
 
 
 20
 We read this statute as placing the responsibility on the Commissioner to file his findings in the State register. Upon his failure to do so, the attempted promulgation is definitively flawed. The District Court's identical conclusion, 524 F.Supp. at 1252-53, is thus affirmed.
 
 III
 
 21
 Having considered and rejected the Association's objections to the Act founded on State law, we turn to its Federal contentions.
 
 A. Preemption
 
 22
 The Association's preemption argument claims Federal supremacy in the regulation of hazardous and toxic substances in the work place as established by the United States constitution[10] and the Federal Occupational Safety and Health Act of 1970,[11] (hereinafter "OSHA"). However, OSHA provides, in part, that:
 
 
 23
 (a) Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.
 
 
 24
 (b) Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.
 
 
 25
 29 U.S.C. § 667(a) & (b).
 
 
 26
 Appellant argues that there is a Federal standard in existence under section 655 and, since West Virginia has not submitted a State plan for the development of such standards and their enforcement, all State regulation is preempted. West Virginia avers that there is no Federal standard in effect and, accordingly, that it is not prevented from asserting jurisdiction.
 
 
 27
 The District Court found that the Secretary of Labor, pursuant to OSHA, did adopt certain standards relating to toxic and hazardous substances which included safe exposure levels. 542 F.Supp. at 1254. But, the Court further held, this Federal standard did not operate to preempt West Virginia's statute because the two laws were different in object and purpose:
 
 
 28
 The standard that the State of West Virginia seeks to implement is not a "level of exposure" standard. National standards exist as to exposure; both the federal and state regulations adopt those standards. The standard that the State of West Virginia seeks to implement is a "notice and posting" standard, designed to inform employees of toxic or hazardous substances in the workplace, of permissible exposure levels and of the symptoms of overexposure to those substances.
 
 
 29
 Id.
 
 
 30
 The Association maintains that the District Court's view of the Federal regulations is too narrow, finding a Federal intent to reach the issue of disclosure, as well as that of exposure. To preserve Federal discretion in this field, it is contended that State jurisdiction should be strictly limited.
 
 
 31
 We do not find this point persuasive. So sweeping a definition of the term "standard" would defeat most forms of State participation in achieving the national objective of safe workplaces. Moreover, we are reluctant to attribute proscriptive meaning to the Federal agency's decision not to require posting.[12] Federal determinations not to regulate may stem from innumerable considerations unrelated to the health and safety issue. Such a negative implication should not be preclusive. We hold that West Virginia properly may assert her interest in this fashion.
 
 B. Due process
 
 32
 The Association next urges that, even if State notice and posting requirements are generally permissible, this statute must be struck down as repugnant to the Federal constitution. The statutory language is said to be so imprecise as to amount to a violation of the due process clause of the Fourteenth Amendment. Specifically, words and phrases such as "work area," "work site," "conspicuously" and "readily visible" are allegedly vague, leaving employers without meaningful guidance as to how they may effect compliance. The State counters that a "plain meaning" construction of the statute cures any alleged defect.
 
 
 33
 It is, of course, beyond dispute that an enactment imposing criminal penalties for its violation must clearly define the prohibited acts in order to rebuff a constitutional challenge. See, e.g., Kolender v. Lawson, --- U.S. ----, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); Papachristou v. City of Jacksonville, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). It is likewise clear, however, that "[t]he degree of vagueness that the Constitution tolerates ... depend[s] in part on the nature of the enactment[,]" Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982) and that with respect to "regulatory statutes governing business activities, greater leeway is allowed." Papachristou, 405 U.S. at 165, 92 S.Ct. at 845. And when matters of public health and safety are involved, saving constructions are to be encouraged. Bristol Steel & Iron Works v. Occupational Safety & Health Review Commission, 601 F.2d 717 (4th Cir.1979).
 
 
 34
 Drawing on all of this, we hold that W.Va. Code § 21-3-18 (1981) is not void for vagueness. The meaning of its language is discoverable from the context and thereby gives full and fair notice to those of ordinary intellect that certain specified conduct is prohibited.
 
 C. Equal protection
 
 35
 The Association claims, finally, that the Act violates principles of equal protection by excluding from its coverage the coal, horticulture and agriculture industries and employers of less than ten employees. W.Va.Code § 21-3-18(c) & (f) (1981). These exceptions are said to be unreasonable in view of the Act's stated purpose, which is to ensure that employees exposed to certain toxic substances at work would be warned of the potential harm from overexposure.
 
 
 36
 The principles governing equal protection analysis are familiar:
 
 
 37
 In applying that clause, this Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."
 
 
 38
 Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 251, 253-254, 30 L.Ed.2d 225 (1971) (quoting Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920)). The question, then, is whether the Act's underinclusiveness can reasonably be justified with reference to its purpose.
 
 
 39
 We agree with the State and with the trial court that the goal of avoiding duplicative regulation supports the exclusions granted to the coal, horticulture and agriculture industries. The latter two industries are extensively regulated at the Federal level by the U.S. Environmental Protection Agency;[13] with respect to coal mining and production, West Virginia's own Department of Mines has established comprehensive health and safety rules[14] in addition to pertinent Federal Standards.[15] The exemptions for these industries, then, do not represent an arbitrary classification. Rather, they represent a legislative pattern to regulate those aspects of industry which presently lack such control while adding no further burden where protection is adequate. These features are not constitutional derelictions.
 
 
 40
 The second classification to which the appellant objects excludes employers having fewer than ten employees. The Association notes that the danger of overexposure remains the same regardless of the size of the business unit and thus argues that there is no rational basis for the exclusion. The State supports the ten employee threshold with reasons well summarized by the District Court:
 
 
 41
 Many statutory schemes seeking to correct or ameliorate perceived evils in the work place are applicable to employers only if a certain number of employees are retained by the employer. Workmen's Compensation is one example. State labor law in general is another. Such an exclusion should not be interpreted to mean that an employee who is not afforded coverage under such an act is of less concern to the state. The state's legislative body must balance many factors and interests when enacting remedial legislation. It is perfectly rational to presume that greater evil may exist among greater numbers.
 
 
 42
 542 F.Supp. at 1256.
 
 
 43
 We do not quarrel with the District Court's conclusion that the State may permissibly exclude from the Act's coverage employers of small numbers of persons. The constitution does not demand that the State remedy every aspect of a problem,[16] and legislatures are free to balance against the evil intended to be corrected, the finite resources of the State both as to time and money. We hold that, with respect to this and the other exemptions, the Association has not met its obligation of showing that the challenged classifications lack a rational basis.
 
 IV
 
 44
 In conclusion, we determine today that W.Va.Code § 21-3-18 (1981) does not transgress upon the laws of West Virginia herein discussed or affront the Constitution or any other Federal law. The judgment of the District Court now on appeal is
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 West Virginia Mfrs. Ass'n v. West Virginia, 542 F.Supp. 1247 (S.D.W.Va.1982)
 
 
 [2]
 Id
 
 
 [3]
 After the issuance of the District Court's July 1, 1982 order holding the administrative regulations invalid, the Commissioner attempted to promulgate the same regulations under an "emergency" provision of the West Virginia Administrative Procedures Act. However, on Sept. 3, 1982, prior to the effective date of the emergency regulations, the District Court enjoined their effectuation pending this appeal. On Nov. 1, 1982, this Court denied appellees' motion to vacate the injunction pending appeal
 
 
 [4]
 State ex rel. Davis v. Oakley, 156 W.Va. 154, 191 S.E.2d 610 (1972)
 
 
 [5]
 W.Va.Code § 29A-1-1 et seq. (1980 & Supp.1982)
 
 
 [6]
 Id. §§ 29A-3-11, -3-12
 
 
 [7]
 Id. § 29A-3-1
 
 
 [8]
 Voluntary cessation of allegedly illegal conduct can render a case moot if there is no reasonable likelihood that the wrong will be repeated. See DeFunis v. Odegaard, 416 U.S. 312, 318, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974) (per curiam); United States v. W.T. Grant Co., 345 U.S. 629, 632-33, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)
 
 
 [9]
 W.Va.Code § 29A-1-1 et seq. (1980), amended by id. § 29A-1-1 et seq. (Supp.1982)
 
 
 [10]
 "This constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land." U.S. Const. art. VI
 
 
 [11]
 29 U.S.C. § 651 et seq
 
 
 [12]
 Substances more extensively regulated by OSHA, such as asbestos, are frequently required to be labeled. Posting of caution signs may be required. See, e.g., 29 C.F.R. § 1910.1001(g) (1982). However, these more extensively regulated substances, some twenty in number, are not included on the Commissioner's list and therefore are not regulated by W.Va.Code § 21-3-18 (1981); the State concedes that a "posting standard" exists as to these twenty substances
 
 
 [13]
 See 7 U.S.C. § 136 et seq.; 40 C.F.R. § 170.1 et seq. (1974); 29 C.F.R. §§ 1928.2B (1982)
 
 
 [14]
 See W.Va.Code § 22-1-1 et seq. (1981)
 
 
 [15]
 See 30 U.S.C. § 801 et seq.; 30 C.F.R. § 1.1 et seq. (1982)
 
 
 [16]
 See Dandridge v. Williams, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970)