418 S.E.2d 585

STATE of West Virginia ex rel. STATE LINE SPARKLER OF WV, LTD.; R. Robert Kirk; and Jerry G. Kirk, Petitioners Below, Appellees,

v.

William J. "Bucky" TEACH, Hon. Joan V. Bragg, Ruth Donaldson, and Harold E. Darlington, Magistrates of Berkeley County, Respondents Below, Appellants.

No. 20908.

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1992.

Decided May 15, 1992.

Rehearing Denied June 24, 1992.

Michael L. Scales, Greenberg & Scales, Martinsburg, for appellees.

Pamela Jean Games–Neely, Janet L. Scalia, Asst. Pros. Attys., for Berkeley County, Martinsburg, for appellants.

MILLER, Justice:

This is an appeal of a final order of the Circuit Court of Berkeley County which granted the petitioners below a writ of prohibition to prevent respondent William J. "Bucky" Teach from obtaining and the respondent magistrates from issuing criminal warrants to enforce provisions of the Berkeley County Building Code. The circuit court ruled that because the statutes authorizing county commissions to adopt building codes did not expressly authorize the imposition of penalties for violations thereof, the provisions of the county ordinance imposing such sanctions were unconstitutional. We disagree, and we reverse the judgment of the circuit court.

## I.

Two statutes are at the heart of this dispute. In 1988, the legislature enacted W.Va.Code, 29–3–5b, which required the state fire commission to promulgate comprehensive rules and regulations, to be known as the "state building code," for the purpose of "safeguard[ing] life and property and ... ensur[ing] the quality of construction of all structures erected or renovated throughout this State." These regulations were required to address all aspects of building construction, renovation, and operation. W.Va.Code, 29–3–5b, provided that the state building code shall be effective in those counties and municipalities which adopt it, but allowed for more stringent ordinances or regulations. The statute placed the responsibility for enforcement of the state building code on the adopting local jurisdictions. The current statute is virtually identical.[1]

At the same time, the legislature enacted W.Va.Code, 7–1–3n (1988), which voided all existing county building codes one year after the promulgation of the state building code and required a county commission, if it desired thereafter to enact a building code, to adopt the rules and regulations promulgated by the state fire commission under W.Va.Code, 29–3–5b.[2]

In response to the legislative mandate of W.Va.Code, 29–3–5b, the state fire commis-

---

1. The relevant portions of W.Va.Code, 29–3–5b (1990), are:

"(a) The state fire commission shall promulgate and repeal rules and regulations to safeguard life and property and to ensure the quality of construction of all structures erected or renovated throughout this state pursuant to the provisions of chapter twenty-nine-a [§ 29A–1–1 et seq.] of this code through the adoption of a state building code. Such rules, regulations, amendments or repeals thereof shall be in accordance with standard safe practices so embodied in widely recognized standards of good practice for building construction and all aspects related thereto and shall have force and effect in those counties and municipalities adopting the state building code.

\*    \*    \*    \*    \*    \*

"(c) For the purpose of this section the term 'building code' is intended to include all aspects of safe building construction and mechanical operations and all safety aspects related thereto....

"(d) Enforcement of the provisions of the state building code is the responsibility of the respective local jurisdiction. Also, any county

or municipality may enter into an agreement with any other county or municipality to provide inspection and enforcement services.

"(e) After the state fire commission has promulgated rules and regulations as provided herein, each county or municipality intending to adopt the state building code shall notify the state fire commission of its intent."

2. W.Va.Code, 7–1–3n, provides, in pertinent part:

"(a) In addition to all other powers and duties now conferred by law upon county commissions, county commissions are hereby authorized and empowered, by order duly entered of record, to adopt building and housing codes establishing and regulating minimum building and housing standards for the purpose of improving the health, safety and well-being of its citizens....

"(b) Notwithstanding the provisions of subsection (a), all existing county building codes are void one year after the promulgation of a state building code by the state fire commission as provided in section five-b [§ 29–3–5b], article three, chapter twenty-nine of this code.

"Upon the voidance of the county's existing building code, if the county commission votes

sion adopted as part of the state building code the standards set out in the 1990 Building Officials & Code Administrators National Building Code (BOCA).[3] *See* 7 W.Va.C.S.R. § 87-4-4.1 (1991). The BOCA standards provide for penalties for violations in the form of fines and/or imprisonment. The state building code leaves the determination of the appropriate penalty to the discretion of the local government. In particular, the state building code provides that the BOCA standards providing for a penalty of imprisonment for a violation of the rules are "optional with each adopting local jurisdiction." 7 W.Va.C.S.R. § 87-4-5.4. The state fire commission's rules also authorize local governments to adopt or reject certain discretionary provisions of the BOCA standards as a way of adapting them to local conditions. 7 W.Va.C.S.R. § 87-4-5.3.

On January 31, 1991, the Berkeley County Commission adopted a county building code based on the state fire commission's regulations. The ordinance designated violations of the building code as misdemeanors, punishable by fines of up to $500.

In May of 1991, Mr. Teach, Berkeley County's building code enforcement officer, issued notices of building code violations to the petitioners, State Line Sparkler of WV, Ltd. (SLS), a West Virginia corporation, and its principals, R. Robert Kirk and Jerry G. Kirk. Mr. Teach also posted a stop-work notice, requiring construction, alterations, or repairs to cease at the SLS premises in Berkeley County. Mr. Teach subsequently filed criminal complaints in magistrate court charging the Kirks with continuing to operate their business without the required permits after the posting of the stop-work notice. As a result, the Kirks and several SLS employees were arrested.

On June 6, 1991, the petitioners filed with the Circuit Court of Berkeley County a petition for a writ of prohibition seeking to prevent the respondents from obtaining, issuing, or enforcing any warrants against them for alleged violations of the county building code. The petition alleged that the provisions of the building code did not pertain to the activities taking place on the SLS premises and that the language of the ordinance was unconstitutionally vague.

A hearing was conducted on the petition for a writ of prohibition on June 19, 1991. At that time, the circuit court announced its conclusion that the county ordinance adopting the building code was unconstitutional insofar as it permitted imposition of penalties for a violation thereof. The court concluded that because such penalties were not expressly authorized by W.Va.Code, 29-3-5b (1990), and 7-1-3n, provision therefor in the county ordinance exceeded the legislative delegation of authority. A *nunc pro tunc* order reflecting these conclusions was entered on October 12, 1991.

## II.

■ The general rule with regard to the powers of county governments is set forth in Syllabus Point 1 of *State ex rel. County Court v. Arthur*, 150 W.Va. 293, 145 S.E.2d 34 (1965):

" 'The county [commission] is a corporation created by statute, and possessed only of such powers as are expressly conferred by the Constitution and legislature, together with such as are reasonably and necessarily implied in the full and proper exercise of the powers so expressly given. It can do only such things as are authorized by law, and in the mode prescribed.' Point 3, syllabus,

to adopt a building code, it must be the state building code promulgated pursuant to section five-b, article three, chapter twenty-nine of this code.

"(c) In addition to · all other powers and duties now conferred by law upon county commissions, county commissions are hereby authorized and empowered, by order duly entered of record, to adopt such state building code upon promulgation by the state fire commission. . . ."

Similar power is granted to municipalities under W.Va.Code, 8-12-13 (1988).

3. The state fire commission initially adopted the 1987 BOCA standards. These provisions were in effect from April 28, 1989, until June 28, 1990, when they were replaced by emergency rules which incorporated the 1990 revisions to the BOCA standards. Those revisions became part of a permanent rule, now in effect, on April 3, 1991.

*Barbor v. County Court of Mercer County*, 85 W.Va. 359 [101 S.E. 721 (1920)]."

*See also Berkeley County Comm'n v. Shiley*, 170 W.Va. 684, 295 S.E.2d 924 (1982). It is undisputed that neither W.Va.Code, 29–3–5b nor W.Va.Code, 7–1–3n expressly authorizes a county commission adopting the state building code to enact penalties for violations thereof. Nor are we directed to any general grant of power to impose penalties for the violation of county ordinances, such as that conferred upon municipalities.[4]

■ It appears, however, that such power may arise by implication. The general rule is that a grant of the police power to a local government or political subdivision necessarily includes the right to carry it into effect and empowers the governing body to use proper means to enforce its ordinances. *See generally* 5 *McQuillan Municipal Corporations* § 17.04 (3d ed. 1989); 56 Am.Jur.2d *Municipal Corporations, Counties and Other Political Subdivisions* § 414 (1971). Pursuant to this rule, it has been held that even in the absence of an express grant of authority, the power to punish by a pecuniary fine or penalty is implied from the delegation by the legislature of the right to enforce a particular police power through ordinances or regulations.[5] *See, e.g., Dunn v. Mayor & Council of Wilmington*, 59 Del. 287, 219 A.2d 153 (1966); *Metropolitan Sanitary Dist. v. On–Cor Frozen Foods, Inc.*, 36 Ill.App.3d 239, 343 N.E.2d 577 (1976); *City of Louisville v. Fischer Packing Co.*, 520 S.W.2d 744 (Ky.1975); *City of Detroit v. Fort Wayne & B.I. Ry. Co.*, 95 Mich. 456, 54 N.W. 958 (1893); *State v. Grimes*, 49 Minn. 443, 52 N.W. 42 (1892); *Bellerive Inv. Co. v. Kansas City*, 321 Mo. 969, 13 S.W.2d 628 (1929); *State v. Iams*, 78 Neb. 678, 111 N.W. 604 (1907); *Sitterle v. Victo-*

*ria Cold Storage Co.*, 33 S.W.2d 546 (Tex. Civ.App.1930).

Of particular interest is *City of Louisville v. Fischer Packing Co., supra,* where the court considered a city ordinance which provided that any person who failed to file an occupational license tax return would be assessed a penalty of up to 25 percent of the unpaid license fee. The legislation authorizing cities to issue such licenses provided no penalty for failure to file a return. It did, however, provide that licenses issued pursuant to the statute would be "issued and enforced on terms and conditions as prescribed by ordinance." 520 S.W.2d at 745. Recognizing, as we do, that counties and municipalities "possess only those powers which have been granted to them expressly plus those powers necessarily implied or incident thereto as to enable them to carry out the expressed powers," the Kentucky court held that the enabling legislation,

"having expressly authorized the levy and the collection of the occupational license and having provided that they shall be issued and enforced as prescribed by ordinance, authorize by implication the power to require the filing of a return and the enforcement of that requirement by means of a penalty as a necessary incident to the exercise of the expressed grant." 520 S.W.2d at 746. (Citations omitted).

■ The enabling legislation here contains similar provisions. W.Va.Code, 29–3–5b(d), provides: "Enforcement of the provisions of the state building code is the responsibility of the respective local jurisdiction." By authorizing county commissions to exercise the police power with regard to the safety and quality of building construction, maintenance, and operation, and by placing the responsibility for enforcement

---

4. W.Va.Code, 8–11–1 (1990), gives municipal corporations plenary power to enact ordinances "and, for a violation thereof, to prescribe reasonable penalties in the form of fines, forfeitures and imprisonment in the county jail or the place of imprisonment in such municipality, if there be one, for a term not exceeding thirty days." *See also* W.Va.Code, 8–12–2(a)(11) (1969), 8–12–5 (1989).

5. The rule may be otherwise where the ordinance is not enacted pursuant to a grant of police power. *See City of Detroit v. Fort Wayne & B.I. Ry. Co.,* 95 Mich. 456, 54 N.W. 958 (1893). *See generally* 62 C.J.S. *Municipal Corporations* § 179 (1949).

on the adopting local government, the legislature has, by implication, granted counties the power to enforce violations of building code ordinances by imposing a fine. We conclude, therefore, that the power to impose pecuniary penalties for violations of the county building code was within the legislature's delegation of authority to the county commission.

### III.

The circuit court concluded, and the petitioners argue on appeal, however, that the delegation of legislative authority was itself invalid. In this regard, the petitioners rely on *State v. Grinstead*, 157 W.Va. 1001, 206 S.E.2d 912 (1974).

In *Grinstead*, the Court considered a challenge to a criminal statute proscribing the possession or sale of dangerous drugs on the ground that the legislature had unlawfully delegated its law-making authority to the West Virginia Board of Pharmacy. The statute in question authorized the Board to expand a list of proscribed drugs by adding substances which (1) contained or were derived from barbituric acid or amphetamines, (2) were determined by the Board, after investigation, to be habit-forming because of their stimulant effect on the central nervous system, or (3) were designated as dangerous or habit-forming by existing or future federal drug regulations. The defendant in *Grinstead* was convicted of possession and delivery of lysergic acid diethylamide (LSD) after that drug was added to the federal list.

This Court in *Grinstead* was concerned with whether the legislature's delegation of authority violated Article VI, Section 1 of our State Constitution, which reposes the law-making authority in the legislature.[6]

6. Article VI, Section 1 of the West Virginia Constitution provides, in pertinent part: "The legislative power shall be vested in a senate and house of delegates."

7. Article V, Section 1 of the West Virginia Constitution provides:
    "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than

We noted that under this provision, a statute "may be invalid as incomplete if it is left to a body other than the Legislature to determine without benefit of legislative standards what shall and shall not be an infringement of the law." 157 W.Va. at 1010, 206 S.E.2d at 918. We determined that the Board's power to expand the list of proscribed drugs under the first two categories was accompanied by sufficient legislative standards to constitute a valid delegation of legislative authority. Moreover, we stated that the legislature could adopt and incorporate by reference existing model legislation or the enactments of other bodies declaring conduct unlawful.

■ Our ultimate conclusion, however, was that the legislature could not empower the Board to engraft future declarations of unlawful conduct by other bodies onto the present statute: "[W]hen a legislative body delegates its legislative powers so loosely as to permit another legislative body or an executive board or agency to redefine and expand the criminal acts *in futuro* and without limitation, such attempt at delegation is constitutionally invalid." 157 W.Va. at 1011, 206 S.E.2d at 919. We reasoned that under Article VI, Section 1 and Article V, Section 1, relating to separation of powers,[7] "enactment of criminal statutes is solely a legislative function.... The authority to enact laws, being exclusively a legislative function, cannot be transferred or abdicated to others." 157 W.Va. at 1013, 206 S.E.2d at 920. (Citations omitted). We found the statute to be unconstitutional insofar as it granted the Board of Pharmacy the power to declare conduct unlawful based on future federal pronouncements[8] and reversed the defendant's conviction.

one of them at the same time, except the justices of the peace shall be eligible to the legislature."

8. In *West Virginia Manufacturers Association v. State*, 714 F.2d 308 (4th Cir.1983), the Court of Appeals held that the principal concern of the *Grinstead* court, i.e., that the statute allowed the Board to proscribe certain conduct as unlawful without the prior approval of the legislature, has been addressed by revisions to the state Administrative Procedures Act requiring such

The petitioners argue that the principles enunciated in *Grinstead* precluded the legislature from delegating to county commissions the power to penalize violations of county building codes. What this argument ignores is the fact that in *Grinstead*, the legislature attempted to delegate its law-making function to an administrative body, an agency of the executive branch of government. In such cases, the constitutional provisions relating to separation of powers and reposing the law-making function in the legislature prevent delegation except where the legislation is complete and sets forth adequate standards to guide the agency in the exercise of such power. *See, e.g., State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981); *Quesenberry v. Estep,* 142 W.Va. 426, 95 S.E.2d 832 (1957); *State v. Grinstead, supra; Rinehart v. Woodford Flying Serv.,* 122 W.Va. 392, 9 S.E.2d 521 (1940).

Here, however, the delegation was made to the county commission, a political subdivision of the State. In such circumstances, the general rule restricting delegation of legislative authority has no application. *See generally* 16 Am.Jur.2d *Constitutional Law* § 350 (1979). We have repeatedly recognized the legislature's authority to delegate its law-making power to municipal corporations and counties as to matters of local concern. *See, e.g., State ex rel. City of Charleston v. Bosely,* 165 W.Va. 332, 268 S.E.2d 590 (1980); *State ex rel. City of Charleston v. Coghill,* 156 W.Va. 877, 207 S.E.2d 113 (1973); *State ex rel. City of Charleston v. Sims,* 132 W.Va. 826, 54 S.E.2d 729 (1949); *Brackman's, Inc. v. City of Huntington,* 126 W.Va. 21, 27 S.E.2d 71 (1943); *Haigh v. Bell,* 41 W.Va. 19, 23 S.E. 666 (1895). The Constitution itself recognizes the legislature's right to delegate to county governments by stating in Article IX, Section 11 that county commissions "may exercise such other powers, and perform such other duties, not

of a judicial nature, as may be prescribed by law." Such delegation does not violate the separation of powers doctrine contained in Article V, Section 1 of the West Virginia Constitution.

Here, no other infirmity in the legislative grant of authority is alleged. The legislature itself had the authority to exercise the powers it delegated to the county commission. There is no allegation that the penalty imposed under the county ordinance is in conflict with any other legislative enactment. We therefore find no reason for holding the ordinance unconstitutional as the result of an invalid delegation of state authority, and we reverse the judgment of the circuit court.

### IV.

We note in closing that the parties below raised several issues with regard to the certainty of the language of the ordinance and its application to the particular facts in this case. Resolution of those issues was avoided by the circuit court's ruling on the constitutionality of the ordinance. We do not address these issues based on our familiar rule expressed in Syllabus Point 2 of *Duquesne Light Co. v. State Tax Department,* 174 W.Va. 506, 327 S.E.2d 683 (1984), *cert. denied,* 471 U.S. 1029, 105 S.Ct. 2040, 85 L.Ed.2d 322 (1985):

" 'This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Co.,* 143 W.Va. 522, 102 S.E.2d 733 (1958)."

For the reasons stated herein, the judgment of the Circuit Court of Berkeley County is reversed, and the case is remanded for such further proceedings as may be necessary.

Reversed and remanded.

regulations to be approved by the entire legislature. *See* W.Va.Code, 29A-1-1, *et seq.;* 29A-3-11 (1986); 29A-3-12 (1986). We have not yet passed on the constitutionality of this procedure, and we decline to do so here. *See Chico*

*Dairy Co. v. West Virginia Human Rights Comm'n,* 181 W.Va. 238, 382 S.E.2d 75 (1989); *West Virginia Chiropractic Soc'y, Inc. v. Merritt,* 178 W.Va. 173, 358 S.E.2d 432 (1987).