**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


PAT REED,
COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner

vs.  No. 17-0691 (Boone County No. 16-AA-1)

DOREEN GRILLOT,
Petitioner Below, Respondent.

**FILED**
**March 4, 2019**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA


### MEMORANDUM DECISION

The petitioner herein and respondent below, Pat Reed, Commissioner of the West Virginia Division of Motor Vehicles ("the Commissioner"), by counsel Attorney General Patrick Morrissey and Assistant Attorney General Janet E. James, appeals from an order entered July 7, 2017, by the Circuit Court of Boone County.  By that order, the circuit court reversed the order of the Office of Administrative Hearings ("OAH") issued November 4, 2016; found that the respondent herein and petitioner below, Doreen Grillot ("Ms. Grillot"), by counsel Matthew M. Hatfield, had not driven a motor vehicle while under the influence of alcohol ("DUI"); and reinstated her driver's license.  On appeal, the Commissioner assigns error to the circuit court's rulings.

Upon consideration of the parties' briefs, oral arguments, and the appendix record, this Court concludes that the circuit court erred in reversing the order of the OAH because the record evidence is sufficient to support a finding that Ms. Grillot drove a motor vehicle while under the influence of alcohol which warranted the administrative revocation of her driver's license.  Accordingly, we reverse the July 7, 2017 order of the Circuit Court of Boone County and remand this case to the circuit court for entry of an order reinstating the Commissioner's order of revocation.  Because this case does not present a new or significant issue of law, and for the reasons set forth herein, we find this case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

1

The facts of the instant proceeding are mostly disputed by the parties. At approximately 1:54 a.m. on March 10, 2012, Officer L.W. Holeston, of the Madison, West Virginia, Police Department,[1] was driving his patrol car in Madison and reportedly saw Ms. Grillot driving in the opposite direction, straddling the center line, weaving, swerving into Officer Holeston's lane of traffic, using the brakes frequently, and traveling at a slow rate of speed. According to Ms. Grillot, Officer Holeston was traveling behind her vehicle and, due to the bright lights on his car, she pulled into a restaurant parking lot; Officer Holeston pulled into the parking lot behind her and turned on his car's blue lights. Pursuant to Officer Holeston, he turned on his car's blue lights and stopped Ms. Grillot at the same restaurant parking lot she referenced.

Officer Holeston reported that, when he approached Ms. Grillot's vehicle, he smelled alcohol and observed wine in the car. He further stated that Ms. Grillot was unsteady while exiting her vehicle, walking, and standing; she had slurred speech; and her eyes were red and glassy. Officer Holeston claims that Ms. Grillot said that she had drunk a beer; Ms. Grillot denies making this statement and claims, instead, that she had not been drinking alcohol prior to this encounter with Officer Holeston.

Thereafter, Officer Holeston administered three field sobriety tests to Ms. Grillot. The horizontal gaze nystagmus ("HGN") test checks eye movement. On the D.U.I. Information Sheet, upon which Officer Holeston recorded his encounter with Ms. Grillot, Officer Holeston indicated that Ms. Grillot had a resting nystagmus, which, if accurate, would have negated the HGN test. Just prior to the OAH hearing, however, Officer Holeston claimed that such notation was in error. Testimony provided by Officer Holeston regarding the degree calculations for this test also calls the accuracy of these test results into question.

Next, Officer Holeston requested Ms. Grillot to complete the walk and turn test; the D.U.I. Information Sheet indicates that she missed the heel-to-toe part of the test. Finally, Officer Holeston administered the one leg stand test, reporting that Ms. Grillot completed this test on one leg while swaying and putting her foot down on the other leg.

Officer Holeston then attempted to administer a preliminary breath test, but Ms. Grillot provided an insufficient sample. After transporting Ms. Grillot to the police station, Officer Holeston reported that he gave her a secondary chemical test of her breath, and that she also blew an insufficient sample for this test. Thereafter, Officer Holeston noted that he offered Ms. Grillot an additional secondary chemical test, which she refused. Ms.

---

[1]Officer Holeston is no longer employed by the Madison Police Department.

2

Grillot, however, disputes this claim and asserts that she requested a secondary blood or urine test, which Officer Holeston refused to provide.

In Ms. Grillot's corresponding criminal proceeding following her arrest for DUI, Ms. Grillot's attorney allegedly requested the video of the traffic stop from Officer Holeston's patrol car's video recording system. It is unclear whether the system in Officer Holeston's car actually recorded Officer Holeston's traffic stop of Ms. Grillot and his administration of the three field sobriety tests because no such video could be located. Various testimony suggests that the subject video was created and either was lost or that the Madison Police Department failed to preserve it.

Officer Holeston completed and submitted a D.U.I. Information Sheet alleging that Ms. Grillot had operated a motor vehicle while under the influence of alcohol, and, on April 6, 2012, the Commissioner of the Division of Motor Vehicles entered an Order of Revocation revoking Ms. Grillot's driver's license based on such allegations. Ms. Grillot appealed the Commissioner's order, which stayed her license revocation, and the OAH held an evidentiary hearing on the matter. By order entered November 4, 2016, the OAH affirmed the Commissioner's Order of Revocation, ruling that Ms. Grillot had driven a motor vehicle while under the influence of alcohol. Ms. Grillot then appealed the OAH's order to the Circuit Court of Boone County. By order entered July 7, 2017, the circuit court reversed the OAH's order, ruling that the OAH had not fully considered all of the evidence presented in the case. It is from this adverse ruling that the Commissioner now appeals to this Court.

The instant proceeding is before the Court on appeal from a circuit court order that reversed a decision of the OAH. We previously have held that,

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). In this regard, the Court's review is prescribed by the governing statutory law. Thus,

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure[s] Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify

3

the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983). *Accord* W. Va. Code § 29A-5-4(g). Moreover, with specific regard to the posture of the case *sub judice*, we have held that

> "[i]n cases where the circuit court has [reversed] the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

Syl. pt. 2, *Reed v. Hall*, 235 W. Va. 322, 773 S.E.2d 666 (2015).

On appeal to this Court, the Commissioner first raises the issue of whether the investigating officer had reasonable suspicion to stop Ms. Grillot's vehicle. The circuit court, however, did not find that Officer Holeston improperly stopped Ms. Grillot's car or render any rulings in this regard. Neither has Ms. Grillot responded to this assignment of error. Insofar as this query does not implicate the circuit court's jurisdiction to hear Ms. Grillot's appeal from the OAH, and given that the circuit court has not considered or decided this issue, this particular question is not properly before us. *See* Syl. pt. 4, *State ex rel. State Line Sparkler of WV, Ltd. v. Teach*, 187 W. Va. 271, 418 S.E.2d 585 (1992) ("'"This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syllabus Point 2, *Sands v. Security Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958).' Syllabus Point 2, *Duquesne Light Co. v. State Tax Department*, 174 W. Va. 506, 327 S.E.2d 683 (1984), *cert. denied*, 471 U.S. 1029, 105 S. Ct. 2040, 85 L. Ed. 2d 322 (1985)."). *See also Tri-State Petroleum Corp. v. Coyne*, 240 W. Va. 542, 557 n.37, 814 S.E.2d 205, 220 n.37 (2018) ("'Our general rule in this regard is that, when nonjurisdictional questions have not been decided at the trial court level and

4

are then first raised before this Court, they will not be considered on appeal.' *Whitlow v. Bd. of Educ. of Kanawha Cty.*, 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993).").

The Commissioner next assigns error to the circuit court's rulings rejecting the OAH's assessment of the proffered facts and finding insufficient evidence to support the administrative revocation of Ms. Grillot's driver's license. In rendering its decision, the circuit court commented that the OAH failed to give credence to evidence that did not support its finding that Ms. Grillot had been driving under the influence. By the same token, however, the circuit court discounted evidence that did not support Ms. Grillot's version of events and its ultimate determination that she had not been driving under the influence. Upon a review of the entire record in this matter, though, it is clear that the evidence supports the OAH's determination that Ms. Grillot was operating a motor vehicle while under the influence of alcohol and the OAH's corresponding administrative revocation of Ms. Grillot's driver's license for DUI.

We previously have observed that "[s]ince a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations." Syl. pt. 1, in part, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000). Likewise, "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record." *Martin v. Randolph Cty. Bd. of Educ.*, 195 W. Va. 297, 304, 465 S.E.2d 399, 406 (1995). In this regard,

> [w]e cannot overlook the role that credibility places in factual determinations, a matter reserved exclusively for the trier of fact. We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence. . . . Whether or not the ALJ came to the best conclusion, however, she was the right person to make the decision. An appellate court may not set aside the factfinder's resolution of a swearing match unless one of the witnesses testified to something physically impossible or inconsistent with contemporary documents. . . . The ALJ is entitled to credit the testimony of those it finds more likely to be correct.

*Martin*, 195 W. Va. at 306, 465 S.E.2d at 408 (internal citations and quotations omitted).

The evidence presented in the underlying proceedings demonstrates that Ms. Grillot was driving her vehicle in a manner suggesting that she was under the influence of alcohol. Pursuant to Officer Holeston's D.U.I. Information Sheet, which he completed following his arrest of Ms. Grillot, she was driving at a slow rate of speed, weaving, swerving, and straddling the center line. Additionally, when Ms. Grillot exited her vehicle, Officer Holston recorded, on the D.U.I. Information Sheet, that she had slurred speech, red and glassy eyes, the odor of alcohol on her breath, and was unsteady while exiting her vehicle, standing, and walking to the roadside. Officer Holeston also observed wine in Ms. Grillot's vehicle: one opened, empty bottle and one unopened, full bottle.

Moreover, while the parties dispute whether Officer Holeston properly administered the HGN field sobriety test to Ms. Grillot, the D.U.I. Information Sheet unequivocally demonstrates that Ms. Grillot missed heel-to-toe on the walk and turn test and that she swayed and put her foot down during the one leg stand test. Finally, the D.U.I. Information Sheet indicates that Ms. Grillot initially refused and then blew an insufficient sample for the preliminary breath test; that she blew an insufficient sample for the secondary chemical breath test administered at the Madison Police Department; and that she then refused any additional tests and refused to sign the D.U.I. Information Sheet advising her of her *Miranda* rights.[2]

All of these facts, taken together, support the OAH's finding that the record evidence warranted a finding that Ms. Grillot operated a motor vehicle while under the influence of alcohol. *See generally* Syl. pt. 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984) ("Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.").

To the extent that the evidence is conflicting regarding whether Ms. Grillot admitted to consuming alcohol, whether she asked for an additional secondary chemical test, and/or whether a video of the traffic stop existed and/or whether, if such a video did exist, it was lost, withheld, or destroyed, each of these queries involve credibility determinations within the purview of the trier of fact.[3] Here, the trier of fact was the administrative law judge

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] Although Officer Holeston reported that Ms. Grillot admitted to consuming a beer that evening, and Ms. Grillot denies the same, there exists sufficient other evidence upon

who presided over the OAH proceedings, and such credibility assessments, as well as the corresponding findings of fact, are entitled to deference unless clear error has been committed. In short, absent a showing of such error, the circuit court is not entitled to reevaluate the evidence or reassess the credibility of the witnesses because it prefers its own findings to those of the OAH's administrative law judge. *See* Syl. pt. 1, in part, *Cahill*, 208 W. Va. 177, 539 S.E.2d 437; *Martin*, 195 W. Va. at 304, 306, 465 S.E.2d at 406, 408. From the tenor of the circuit court's order in the case *sub judice*, it is clear that the circuit court impermissibly substituted its view of the evidence for that of the OAH. Accordingly, we reverse the July 7, 2017 order of the Circuit Court of Boone County and remand this case to the circuit court for entry of an order reinstating the Commissioner's order of revocation.

Reversed and Remanded.

---

which to find that Ms. Grillot was driving a motor vehicle while under the influence of alcohol. The same also is true regarding the conflicting testimony regarding whether Ms. Grillot requested an additional secondary chemical test and whether there existed a video of the events surrounding the subject traffic stop. Resolution of each of these issues relied upon an evaluation of conflicting testimony by the administrative law judge and resulted in a reasoned decision weighing the evidence and resolving such conflicts. *See* Syl. pt. 6, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996) ("Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court."). It goes without saying that evidence gathered and presented closer in time to the underlying events would likely be more reliable than that obtained and submitted nearly four years after the occurrence of the events in question. Yet that is precisely the procedural posture of this and other cases being appealed to this Court. *See, e.g., Reed v. Pompeo*, 240 W. Va. 255, 810 S.E.2d 66 (2018). We wish to remind the administrative agencies involved in these cases of the pressing need to resolve these matters expeditiously to ensure the safety of the roadways in this State. *See In re Petition of McKinney*, 218 W. Va. 557, 562, 625 S.E.2d 319, 324 (2005) (recognizing DMV administrative proceedings serve "purpose of speedily removing intoxicated drivers from our public roadways").

**ISSUED:**     March 4, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison